# United States Court of Appeals for the Federal Circuit

_____

**VETERANS JUSTICE GROUP, LLC,**
*Petitioner*

**v.**

**SECRETARY OF VETERANS AFFAIRS,**
*Respondent*

_____

2015-7021

_____

Petition for review pursuant to 38 U.S.C. § 502.

-----------------------------------------------------------

**NATIONAL ORGANIZATION OF VETERANS'
ADVOCATES, INC.,**
*Petitioner*

**v.**

**SECRETARY OF VETERANS AFFAIRS,**
*Respondent*

_____

2015-7025

_____

Petition for review pursuant to 38 U.S.C. § 502.

-----------------------------------------------------------

**THE AMERICAN LEGION, AMVETS, THE
MILITARY ORDER OF THE PURPLE HEART,
VIETNAM VETERANS OF AMERICA, NATIONAL
VETERANS LEGAL SERVICES PROGRAM,**
*Petitioners*

**v.**

**SECRETARY OF VETERANS AFFAIRS,**
*Respondent*

————————————

2015-7061

————————————

Petition for review pursuant to 38 U.S.C. § 502.

————————————

Decided: April 7, 2016

————————————

DOUGLAS J. ROSINSKI, Douglas J. Rosinski, Esq. Inc., Columbia, SC, argued for petitioner in 2015-7021.

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for petitioner in 2015-7025.

FRANCESCO VALENTINI, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC, argued for petitioners in 2015-7061. Also represented by CARL JOHN NICHOLS; BARTON F. STICHMAN, National Veterans Legal Services Program.

MARTIN F. HOCKEY, JR., Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also

represented by ROBERT E. KIRSCHMAN, JR., BENJAMIN C. MIZER; DAVID J. BARRANS, BRIAN D. GRIFFIN, Office of General Counsel, United States Department of Veterans Affairs.

THOMAS JAMES REED, Widener University, Wilmington, DE, for amicus curiae Warriors Helping Warriors, Inc. in 2015-7021.

ANGELA K. DRAKE, The Veterans Clinic at the University of Missouri School of Law, Columbia, MO, for amici curiae Angela K. Drake, Brian Clauss, Yelena Duterte, Hugh McClean, Laurie Forbes Neff, Patricia E. Roberts, Susan Saidel, Stacey-Rae Simcox, Aniela K. Szymanski, Michael Joel Wishnie in 2015-7021.

BRIAN BERLINER, O'Melveny & Myers LLP, Los Angeles, CA, for amicus curiae Mazon: A Jewish Response to Hunger. Also represented by JASON ALAN ORR, DIMITRI PORTNOI, CATALINA JOOS VERGARA in 2015-7061.

————————

Before PROST, *Chief Judge*, WALLACH and TARANTO, *Circuit Judges.*

WALLACH, *Circuit Judge.*

In related petitions,[1] the American Legion ("American Legion"), the National Organization of Veterans' Advocates, Inc. ("NOVA"), and the Veterans Justice Group, LLC ("VJG") (collectively, "Petitioners"), challenge the

———

[1] *Veterans Justice Grp., LLC v. Sec'y of Veterans Affairs*, No. 2015-7021 (Fed. Cir. argued Oct. 8, 2015), *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, No. 2015-7025 (Fed. Cir. argued Oct. 8, 2015); *Am. Legion v. Sec'y of Veterans Affairs*, No. 2015-7061 (Fed. Cir. argued Oct. 8, 2015).

validity of regulations issued in 2014 by the Department of Veterans Affairs ("VA" or "Secretary") pursuant to its notice-and-comment rulemaking authority. *See Standard Claims and Appeals Forms*, 79 Fed. Reg. 57,660 (Dep't of Veterans Affairs Sept. 25, 2014) ("Final Rule").[2] The Final Rule amends the VA's adjudication and appellate regulations to require that all claims and appeals originate on standard VA forms. *See id.* at 57,678. For the reasons set forth below, we deny the petitions and hold the Final Rule valid because it accords with applicable rulemaking procedures and is not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

BACKGROUND

To understand the issues relevant to this appeal, we discuss, in turn, the VA's prior regulation, the Final Rule, and the general arguments in the Petitions for Review.

I.   Prior Regulation

A.   Claim Initiation

Veterans are entitled to compensation "[f]or disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty . . . during a period of war." 38 U.S.C. § 1110 (1998). For veterans to receive compensation under the laws administered by the VA, "[a] specific claim in the form prescribed by the Secretary . . . must be filed." *Id.* § 5101(a)(1). The VA's prior regulation implemented this authority by providing that "[*a*]*ny* communication or action, indicating an intent to apply for . . . benefits[,] . . . may be considered an informal claim." 38 C.F.R. § 3.155(a) (2014) (emphasis added) ("Prior Regulation").

---

[2]    The Final Rule took effect on March 24, 2015. *See* Final Rule, 79 Fed. Reg. at 57,660.

Under the Prior Regulation, a veteran could establish a claim's effective date (i.e., when the claimant begins to receive compensation) by filing an informal claim, so long as a formal application was received by the VA "within [one] year from the date [the formal application form] was sent to the claimant." *Id.*

## B. Appeal

If a claimant perfected an informal claim by filing a formal application within the one-year time period, a VA Agency of Original Jurisdiction, typically a VA regional office ("RO"), considered the claim, gave notice to the claimant of its decision, and informed the claimant of his or her right to appeal. *See* 38 U.S.C. § 5104 (1998); 38 C.F.R. § 3.103(b)(1) (2014). An appeal could be initiated by filing a Notice of Disagreement ("NOD"), *see* 38 U.S.C. § 7105(a) (1998), and unless the requested benefit was granted or the NOD withdrawn, the VA would issue a "statement of the case" ("SOC") summarizing the reasons for the VA's decision on each issue, *id.* § 7105(d)(1). Following issuance of the SOC, the "claimant [would] be afforded a period of sixty days from the date of the [SOC] to file a formal appeal" with the Board of Veterans' Appeals ("Veterans Board"). *Id.* § 7105(d)(3). The statute provides that the "appeal should set out specific allegations of error of fact or law, such allegations related to specific items in the [SOC]." *Id.*

The NOD is required to be: (1) filed within one year of the mailing of notice of the RO's decision; and (2) in writing. *Id.* § 7105(b)(1). In addition to these statutory requirements, the VA required an NOD to "be in terms which [could] be reasonably construed as disagreement with [the RO's decision] and a desire for appellate review," although "special wording [was] not required." 38 C.F.R. § 20.201 (2014). However, if the RO's notice of decision decided multiple issues, under the Prior Regula-

tion the claimant was required to specify which agency determinations he or she sought to appeal. *Id.*

## II.    Final Rule

In September 2014, the VA promulgated the Final Rule, which sought to "strike a balance between standardizing, modernizing, and streamlining" the claim initiation and appellate process, while providing "claimants . . . with a process that remains veteran-friendly and informal." Final Rule, 79 Fed. Reg. at 57,664.

Although the Final Rule incorporated a majority of the amendments originally proposed by the VA in 2013, it altered the proposed rule in one important respect. *See Standard Claims and Appeals Forms*, 78 Fed. Reg. 65,490, 65,492 (Dep't of Veterans Affairs Oct. 31, 2013) ("Proposed Rule"). Under the Proposed Rule, submission of an informal claim—e.g., a narrative submission— would no longer serve as an effective date placeholder that could later be perfected by the filing of a formal claim. *See id.* at 65,495 (altering the Prior Regulation's definition of "claim" under 38 C.F.R. § 3.1(p) to exclude informal communications). Instead, an "incomplete claim" would provide the effective date placeholder function formerly provided by an informal claim, if perfected by the filing of a standard application form within one year. *Id.* at 65,494. However, in contrast to the flexible nature of the prior "informal claim" system, under the Proposed Rule, a submission would be considered an "incomplete claim" only if a claimant filled out, completely or incompletely, an online application via the VA's web-based electronic claims application system, but "d[id] not transmit the online application for processing." *Id.* Otherwise, claims would be considered received as of the date they were filed on a standard paper application form.

When it published the Proposed Rule in 2013, the VA explained it was "facing an unprecedented volume of compensation claims" resulting in "unacceptable delays at

every phase of [the] process for adjudicating claims and appeals." *Id*. at 65,492. The VA received fifty-three comments in response to the Proposed Rule. While some commenters expressed approval of the agency's attempt to bring increased clarity and efficiency, others expressed concern with certain aspects of the Proposed Rule, including the VA's proposed interpretation of "incomplete claim," which some perceived as unnecessarily parochial.

In lieu of the Proposed Rule's "incomplete claim" concept, the Final Rule establishes an "intent to file"[3] process, which allows claimants to establish the effective date of an award in any of three ways. First, under the Final Rule, an intent to file may be established by saving an electronic application within a VA web-based electronic claims application system before submitting it for actual processing. 38 C.F.R. § 3.155(b)(1)(i) (2015). Second, a claimant may submit a VA standard form ("VAF 21-0966") in either paper or electronic form. *Id*. § 3.155(b)(1)(ii); Final Rule, 79 Fed. Reg. at 57,666. Third, a claimant may establish intent to file by communicating orally with certain designated VA personnel "either in person or by telephone," who will document the claimant's intent. Final Rule, 79 Fed. Reg. at 57,666; *see* 38 C.F.R. § 3.155(b)(1)(iii) (2015). So long as a formal application is filed within one year of the submission, the

---

[3] "An intent to file a claim must provide sufficient identifiable or biographical information to identify the claimant." Final Rule, 79 Fed. Reg. at 57,665. In contrast to informal claims, an intent to file a claim does not require the claimant "to identify the specific benefit sought," *id*., but does require an identification of the general benefit sought (such as compensation versus pension), 38 C.F.R. § 3.155(b)(2) (2015).

VA will deem the effective date to be the date the "intent to file" submission was received.

Lastly, the Final Rule specifies that, where the RO "provides, in connection with its decision, a form identified as being for the purpose of initiating an appeal, an NOD would consist of a completed and timely submitted copy of that form." Final Rule, 79 Fed. Reg. at 57,679; *see* 38 C.F.R. § 20.201(a)(1) (2015). The Final Rule further clarifies the "VA will not accept as [an NOD] an expression of dissatisfaction . . . that is submitted in any other format, including on a different VA form." Final Rule, 79 Fed. Reg. at 57,679; *see* 38 C.F.R. § 20.201(a)(1) (2015).

## III.    Petition for Review

Petitioners contend the Final Rule departs from the "paternalistic, veteran friendly, and non-adversarial nature of veterans benefits adjudication." VJG (15-7021) Br. 1 (internal quotation marks omitted).[4] Petitioners timely filed this appeal pursuant to 38 U.S.C. § 502, which provides this court with jurisdiction to review the Final Rule. *See* 38 U.S.C. § 502 (2012). "[U]nder 38 U.S.C. § 502, we may review [the] VA's procedural and substantive regulations, and the process by which those regulations are made or amended." *Paralyzed Veterans of Am. v. Sec'y of Veterans Affairs*, 345 F.3d 1334, 1339 (Fed. Cir. 2003) (citation omitted).

## DISCUSSION

## I.    Standard of Review

Petitions under 38 U.S.C. § 502 are reviewed under the Administrative Procedure Act ("APA"), as codified in 5

---

[4]    The numbers 15-7021, 15-7025, and 15-7061 denote the record materials and briefs in Appeal Nos. 2015-7021, 2015-7025, and 2015-7061, respectively.

U.S.C. § 706.  *See Nyeholt v. Sec'y of Veterans Affairs*, 298 F.3d 1350, 1355 (Fed. Cir. 2002).  Under § 706, we must "hold unlawful and set aside agency action" we find "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2) (2012). "This review is highly deferential to the actions of the agency."  *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1372 (Fed. Cir. 2001) (internal quotation marks and citation omitted).

II.    The Final Rule Is a "Logical Outgrowth" of the Proposed Rule

"The APA's rulemaking provisions generally require that notice of proposed rules be published in the Federal Register and that 'interested persons' be given the 'opportunity to participate in the rule making through submission of written data, views, or arguments.'"  *AFL-CIO v. Chao*, 496 F. Supp. 2d 76, 83 (D.D.C. 2007) (quoting 5 U.S.C. § 553(c)).  Although the APA does not explicitly address the relationship the notice of proposed rulemaking must have to the final rule, it provides some guidance when it states that agencies must publish in their notice of proposed rulemaking "either the terms or substance of the proposed rule or a description of the subjects and issues involved."  5 U.S.C. § 553(b)(3).

Under this standard, an agency's final rule need not be identical to the proposed rule.  Indeed, "[t]he whole rationale of notice and comment rests on the expectation that the final rules will be somewhat different and improved from the rules originally proposed by the agency."  *Trans-Pac. Freight Conference of Japan/Korea v. Fed. Mar. Comm'n*, 650 F.2d 1235, 1249 (D.C. Cir. 1980).

Where a proposed rule is modified in light of public comment, the modified rule may be promulgated as a final rule without additional notice and opportunity for comment, so long as the final rule is a "logical outgrowth"

of the proposed rule. *CSX Transp., Inc. v. Surface Transp. Bd.*, 584 F.3d 1076, 1079 (D.C. Cir. 2009); *see also Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 174 (2007) ("Courts of Appeals have generally interpreted [certain language in 5 U.S.C. § 553] to mean that the final rule . . . must be a logical outgrowth of the rule proposed." (internal quotation marks and citations omitted)). "A final rule is a logical outgrowth of [a] proposed rule 'only if interested parties should have anticipated that the change was possible, and thus reasonably should have filed their comments on the subject during the notice-and-comment period.'" *Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 626 F.3d 84, 94–95 (D.C. Cir. 2010) (quoting *Int'l Union, United Mine Workers of Am. v. Mine Safety Health Admin.*, 407 F.3d 1250, 1259 (D.C. Cir. 2005)).

American Legion contends "[t]he Final Rule's intent-to-file [provision] should be set aside . . . because it is not a logical outgrowth of the Proposed Rule." American Legion (15-7061) Br. 46 (citation omitted). According to American Legion, the Proposed Rule "did not propose [the] creat[ion] [of] a new '[i]ntent to [f]ile' form for initiating claims." *Id.* at 47. Instead, American Legion asserts the VA's Proposed Rule sought to modify "the informal claims process and replace it with a system where (i) existing application forms are designated as 'complete' or 'incomplete'; and (ii) electronic claims receive preferential treatment over paper [claims]." *Id.* (citing Proposed Rule, 78 Fed. Reg. at 65,490, 65,494–97; Final Rule, 79 Fed. Reg. at 57,663). Accordingly, American Legion contends that, because "[t]he Final Rule replaces [the Proposed Rule] with something very different [,namely,] a new intent-to-file 'concept' based on a 'new form' that was never mentioned in the Proposed Rule," *id.* (quoting Final Rule, 79 Fed. Reg. at 57,664), it could not have "'antici-

pated that the change was possible,'" *id.* at 46 (quoting *United Mine Workers of Am.,* 626 F.3d at 94–95).

In response, the VA argues it "has not switched direction from the substance of the [P]roposed [R]ule, but has declined to go as far as originally proposed, following consideration of the public comments." VA (15-7061) Br. 37 (internal quotation marks and citation omitted). The VA asserts the potential results of the Proposed Rule that could have been anticipated include "declin[ing] to totally eliminate effective date placeholders for paper claims," and "attempt[ing] to reconcile [the effective date placeholder] policy with its need for standard inputs." *Id.* at 38. Accordingly, the VA asserts that, although "[t]he [F]inal [R]ule uses different terminology and structure," it "effects a policy urged to reconcile these issues." *Id.*

We conclude that, under the circumstances of this case, "interested parties should have anticipated that the change" reflected in the "intent to file" provision of the Final Rule was possible in light of the notice provided in the Proposed Rule. *United Mine Workers of Am.,* 626 F.3d at 94–95. In lieu of the Proposed Rule's introduction of the "incomplete claim" concept, the VA adopted an "intent to file" process. Final Rule, 79 Fed. Reg. at 57,664–67. In addition to allowing a claimant to establish a claim's effective date through the submission of an application on a VA web-based electronic application system, as under the Proposed Rule, the Final Rule expanded a claimant's options by also allowing an effective date to be established by the submission of a written intent to file a claim on a standard VA form, *see* 38 C.F.R. § 3.155(b)(1)(ii) (2015), or via a telephone call or in person, *see id.* § 3.155(b)(1)(iii). Final Rule, 79 Fed. Reg. at 57,664–67.

Contrary to American Legion's contention, the VA's substitution of the "intent to file" process for the proposed "incomplete claim" concept does not constitute a change in

the basic approach of the Proposed Rule—the standardization of the claim initiation process. *See Griffin Indus., Inc. v. United States*, 27 Fed. Cl. 183, 196 (1992) ("The approach . . . adopted by the [agency], while different from the [P]roposed [R]egulation, was a logical outgrowth of the original proposal" because "[t]he [F]inal [R]ule changed neither the substance nor the approach" of the proposed regulation). What is more, not only were the "changes . . . in character with the original scheme[,] [they] were additionally foreshadowed in proposals and comments advanced during the rulemaking" and public comment period. *S. Terminal Corp. v. EPA*, 504 F.2d 646, 658 (1st Cir. 1974); *see also* Final Rule, 79 Fed. Reg. at 57,663–64 (many commenters expressed dissatisfaction with the Proposed Rule's elimination of an effective date "placeholder" for paper claims). "[I]t would be antithetical to the purposes of the notice and comment provisions of the [APA] . . . to tax an agency with 'inconsistency' whenever it circulates a proposal that it has not firmly decided to put into effect and that it subsequently reconsiders in response to public comment." *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 845 (1986).

Lastly, we find American Legion's assertion puzzling because it is incongruent with the contentions it proffers regarding the substantive validity of the Final Rule. Unlike the Proposed Rule, the Final Rule introduces multiple avenues by which claimants may establish an effective date placeholder, thereby creating increased opportunities for claimants to establish a claim's effective date. The Final Rule does not go as far as the Proposed Rule because it does not limit the intent to file process to a VA web-based electronic claims application system. *See* Final Rule, 79 Fed. Reg. at 57,666. However, "[o]ne logical outgrowth of a proposal is surely . . . to refrain from taking the proposed step." *Am. Iron & Steel Inst. v. EPA*, 886 F.2d 390, 400 (D.C. Cir. 1989). Accordingly, we

find that the Final Rule is a logical outgrowth of the Proposed Rule.

### III.    Validity of the Amended Regulations

Petitioners' challenge to the Final Rule may be analytically divided into three categories: 1) claim initiation; 2) appeals; and 3) duty to develop claims.

As to claim initiation, Petitioners assert that the amendment of 38 C.F.R. § 3.1(p) (2014), the Prior Regulation's informal claims provision, is arbitrary and capricious.

With respect to appeals, Petitioners challenge amended 38 C.F.R. § 20.201(a)(1) and (a)(4), requiring that, when the RO provides an appeal form to a claimant in connection with the RO's decision, an NOD initiating appellate review can be effected only by completing that form.

Lastly, Petitioners argue the Final Rule abrogates the VA's duty to develop veterans' claims because it "[i]mpermissibly [r]estricts [t]he [c]laims [d]eemed [r]aised [b]y [v]eterans," American Legion (15-7061) Br. 51, and therefore does not allow the VA to adjudicate claims "reasonably raised" by the record, *id.* at 54. Specifically, Petitioners point to new 38 C.F.R. § 19.24(b), which requires claimants to "enumerate[] the issues or conditions for which appellate review is sought," and new 38 C.F.R. § 3.160(a)(3)–(4), under which claimants must "identify the benefit sought" and provide "a description of symptom(s) or medical condition(s) on which the benefit is based," respectively. We address each of these contentions in turn.

### A. Claim Initiation: 38 C.F.R. Part 3

Our review of an agency's interpretation of a statute that it administers is governed by the two-step framework

articulated in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984). *See Disabled Am. Veterans v. Gober*, 234 F.3d 682, 691 (Fed. Cir. 2000). Under *Chevron* step one, we ask "whether Congress has directly spoken to the precise question at issue." 467 U.S. at 842. If we conclude that it has, "that is the end of the matter." *Id.*

However, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. Alternatively, if a statute is silent, but "Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Id.* at 843–44. The resulting regulations are afforded "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844 (footnote omitted).

American Legion challenges the Final Rule's requirement that claims must originate on standard VA forms, asserting "Congress has . . . enacted legislation that affirmatively contradicts VA's attempts to eliminate informal submissions as placeholders for effective dates." American Legion (15-7061) Br. 30. It first argues that Congress, via the Veterans' Benefits Act of 1957, Pub. L. No. 85-56, 71 Stat. 83 (1957) ("1957 Act"), codified the 1956 version of the "informal claims" regulation, 38 C.F.R. § 3.27 (1956), thus precluding the VA from eliminating the informal claims concept. It next argues that "[l]egislative developments since the 1957 Act confirm Congress'[s] intent to allow veterans to claim their earliest informal written request to [the] VA as the effective date for benefits." American Legion (15-7061) Br. 29. We address each of these contentions in turn.

1.   Congress Did Not Codify the "Informal Claims" Provision of 38 C.F.R. § 3.27 (1956)

a.   In Adopting the VA's 1956 "Effective Date" Regulation, the 1957 Act Did Not Also Adopt the "Informal Claims" Regulation

In an effort to "expedite the adjudication of claims and render the system more comprehensible to veterans and the public," H.R. Rep. No. 85-279, at 1214 (1957), *reprinted in* 1957 U.S.C.C.A.N 1214, 1217 (capitalization omitted), the 1957 Act consolidated "into a single act the subject matter of the extensive body of existing legislation authorizing and governing the payment of compensation for service-connected disability or death to persons who served in the military, naval, or air force of the United States," *id.* at 1214 (capitalization omitted). In addition to the consolidation of existing *legislation*, the 1957 Act also consolidated "all the *administrative* provisions relating to" pension, medical, and other VA benefits. *Id.* at 1215 (emphasis added).

American Legion contends that when Congress enacted the current effective date provision in 1957 (codified as amended at 38 U.S.C. § 5110(a)–(b)(1) (2012)), it *also* made statutory the VA's longstanding rule that informal submissions can establish a claimant's effective date. Thus, American Legion asserts that the VA cannot amend the regulations to exclude informal submissions.

Before the 1957 Act, the VA's effective date provision was codified at 38 C.F.R. § 3.212 (1956). That regulation stated:

> Initial awards of disability compensation will be payable . . . provided an appropriate claim therefor has been filed and, *if incomplete*, the *necessary evidence* to complete such claim is submitted within [one] year from the date of request therefor. . . . [The] claim [must be]

> filed *within [one] year from date of discharge* from such period of service [in order to benefit from an earlier effective date] . . . .

38 C.F.R. § 3.212 (1956) (emphases added). During this period, the VA defined the term "informal claim[]" as "[a]ny communication from or action by a claimant . . . which clearly indicates an intent to apply for disability or death compensation or pension." 38 C.F.R. § 3.27 (1956). Section 3.27 further provided that an informal claim would serve to establish an effective date if a formal application—which would "be considered as *evidence necessary* to complete the initial application"—was "received [by the VA] within [one] year from the date it was transmitted for execution by the claimant." *Id.* (emphasis added).

Without addressing claim completeness or informality, the 1957 Act codified the "one year" provision:

> (b) The effective date of an award of disability compensation to a veteran shall be the date of his discharge or release if application therefor is received *within one year from such date of discharge* or release.

1957 Act, § 910(b), 71 Stat. at 119 (emphasis added).

American Legion asserts that, because informal claims were considered sufficient to establish a claim's effective date under the VA's Prior Regulation, the elevation of the effective date regulation to statute also codified the *means* (i.e., the filing of an informal claim) by which claimants may establish the effective date of their awards.

American Legion's contention effectively raises a *Chevron* step one question because it requires us to address whether Congress "has directly spoken to the precise question at issue." 467 U.S. at 842. That is, we must

determine whether, in codifying the VA's pre-1957 effective date award regulation, Congress also codified the VA's Prior Regulation that informal claims were sufficient to establish the effective date of an award—thus foreclosing the VA's attempt to substitute the informal claims regulation with new 38 C.F.R. § 3.155(b)(1)'s "intent to file" process.

While Congress modeled the 1957 effective date provision on pre-1957 VA regulations, the provision is only indirectly tied to the informal claims definition. It does not define "informal claim," or even include that term. It does not include any of the 1956 regulation's operative terms, such as that an effective date will be established by "[a]ny communication from or action by a claimant . . . clearly indicat[ing] an intent to apply for disability." 38 C.F.R. § 3.27 (1956). *See* 1957 Act, § 910(a)–(b), 71 Stat. at 119. There is no reason to presume that when Congress codified the effective date regulation, it also legislatively adopted, *sub silentio*, the informal claims regulation. *See NLRB v. Plasterers' Local Union No. 79*, 404 U.S. 116, 129–130 (1971) ("It is at best treacherous to find in Congressional silence alone the adoption of a controlling rule of law." (internal quotation marks, brackets, and citation omitted)); *Groff v. United States*, 493 F.3d 1343, 1353 (Fed. Cir. 2007) (because "Congress did not [] define" the relevant term, the statute is silent as to its meaning). Accordingly, the effective date provision does not speak to what action or conduct by the claimant constitutes an informal claim.

What is more, Congress chose not to codify the informal claims provision of 38 C.F.R. § 3.27 (1956) at the same time that it did codify a number of other pre-1957 VA regulations related to a veteran's application for disability benefits. *See* 38 U.S.C. § 3001 (1958) (codifying 38 C.F.R. § 3.26(a) (1956), which provided that a properly completed, VA-prescribed form "constitutes an application

for benefits"); *id.* § 3004 (codifying 38 C.F.R. § 3.201(a) (1956), which provided that where "[n]ew and material evidence" is submitted after a claim is finally disallowed, the new evidence "will constitute a new claim and have all the attributes thereof"); *id.* § 3010(b) (codifying 38 C.F.R. § 3.212 (1956), which allowed an earlier effective date for claims filed "within [one] year from date of discharge"). "[T]he Legislature's silence" with respect to one aspect of a regulatory scheme, in light of its codification of administrative rules governing other aspects of that scheme, "indicates that Congress left the [former] matter where it was" before the statute was enacted. *Kucana v. Holder*, 558 U.S. 233, 235 (2010); *see also Prestol Espinal v. Attorney Gen. of the U.S.*, 653 F.3d 213, 222 n.9 (3d Cir. 2011) (where Congress "codif[ies] some regulations while ignoring others," its "nuanced consideration of which limitations and regulations to codify offers stronger evidence of Congress'[s] intent than does Congress'[s] . . . silence" (internal quotation marks omitted)).

Legislative history is also relevant under the *Chevron* framework, and "may foreclose an agency's preferred interpretation" if it "makes clear what [the statute's] text leaves opaque." *Catawba Cnty., N.C. v. EPA*, 571 F.3d 20, 35 (D.C. Cir. 2009). Here, the statute's "legislative history . . . is [also] silent on the precise issue before us." *Chevron*, 467 U.S. at 862. Neither the 1957 Act nor the House Conference Report accompanying the Act, *see* H.R. Rep. No. 85–279 (1957), discuss the informal claims regulation or any of its operative terms.

b.   Congress Did Not Codify 38 C.F.R. § 3.27 Via Post-1957 Legislation

In further support of its contention that Congress codified the informal claims regulation, American Legion next argues that "[l]egislative developments since the 1957 Act confirm Congress'[s] intent to allow veterans to

claim their earliest informal written request to [the] VA as the effective date for benefits." American Legion (15-7061) Br. 29. Specifically, according to American Legion, "[b]etween 1957 and 2014, Congress took action in connection with the statute's effective-date provisions, 38 U.S.C. § 5110, more than a dozen times. On at least three of these occasions, Congress amended, reenacted, or renumbered the very subsections that had first been signed into statutory law in 1957 . . . ." *Id.* (footnote omitted).

However, "there is nothing to indicate that [the informal claims regulation] was ever called to the attention of Congress," and the reenactment of 38 U.S.C. § 5110 "was not accompanied by any congressional discussion which throws light on its intended scope." *United States v. Calamaro*, 354 U.S. 351, 359 (1957); *see also Comm'r v. Glenshaw Glass Co.*, 348 U.S. 426, 431 (1955) ("Reenactment [of a statute]—particularly without the slightest affirmative indication that Congress ever had [a particular] decision before it—is an unreliable indicium at best."); *Helvering v. Reynolds*, 313 U.S. 428, 432 (1941) (legislative ratification is "no more than an aid in statutory construction" and "does not mean that the prior construction has become so embedded in the law that only Congress can effect a change" (citation omitted)). Accordingly, we reject American Legion's contention that Congress's reenactment of the effective date provision between 1957 and 2014 evidences an intent to codify the informal claims regulation.

c.  The "Incomplete Application" Provision of 38 U.S.C. § 5102(b)–(c) Does Not Indicate Congress Intended to Codify the Informal Claims Regulation

Finally, American Legion asserts that "[s]ince 1957, Congress has not merely acquiesced with VA's position; [it] has also enacted legislation that affirmatively contradicts VA's attempts to eliminate informal submissions as

placeholders for effective dates." American Legion (15-7061) Br. 30. American Legion first points to 38 U.S.C. § 5102(b), which provides that "[i]f a claimant's application . . . is incomplete, the Secretary shall notify the claimant . . . of the information necessary to complete the application." 38 U.S.C. § 5102(b) (2012). An adjacent subsection further states that if a claimant has been "notified under section (b)" and the claimant fails to furnish necessary information "to complete [the] *application*, . . . no benefit may be paid or furnished." *Id.* § 5102(c)(1) (emphasis added). American Legion argues that these subsections, when read in conjunction, require "a claim's effective date [to be] tied to the date on which the veteran *initiates* [*the application*]—not the date of ultimate compliance with the formal application procedures." American Legion (15-7061) Br. 31. Accordingly, American Legion asserts that when Congress enacted section 5102(c) in 2003, because the VA "had long defined the term 'application' to mean 'a formal *or informal* communication in writing requesting a determination of entitlement or evidencing a belief in entitlement, to a benefit[,]'" the "VA cannot . . . eviscerate what Congress plainly understood it was accomplishing when it enacted § 5102(c)." *Id.* (quoting 38 C.F.R. § 3.1(p) (2003)).

American Legion's contention is predicated solely on the fact that Congress possessed knowledge of the VA's definition of "application." This begs the question. It is of little import that Congress was aware of the VA's previous definition of "application" as including an informal written communication. As the Supreme Court has stated:

> The oft-repeated statement that administrative construction receives legislative approval by reenactment of a statutory provision, without material change[,] covers the situation where the validity of administrative ac-

tion standing by itself may be dubious or where ambiguities in a statute or rules are resolved by reference to administrative practice prior to reenactment of a statute; and where it does not appear that the rule or practice has been changed by the administrative agency through exercise of its continuing rule-making power. *It does not mean that a regulation interpreting a provision of one act becomes frozen into another act merely by reenactment of that provision, so that that administrative interpretation cannot be changed prospectively through exercise of appropriate rule-making powers.* The contrary conclusion would not only drastically curtail the scope and materially impair the flexibility of administrative action; it would produce a most awkward situation. Outstanding regulations which had survived one Act could be changed only after a pre-view by the Congress.

*Helvering v. Wilshire Oil Co.*, 308 U.S. 90, 100–01 (1939) (emphasis added) (citation omitted); *see also Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005) ("'An initial agency interpretation is not instantly carved in stone. On the contrary, the agency must consider varying interpretations and the wisdom of its policy on a continuing basis.'" (quoting *Chevron*, 467 U.S. at 863–64)).

The relevant inquiry is not whether Congress was aware of the prior regulations, but whether it intended to bind the VA to its existing definition via the enactment of 38 U.S.C. § 5102(b) and (c). In this case, "Congress has not given any indication of whether it intended" to bind the VA to its previous definition. *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.3d 1574, 1581 (Fed.

Cir. 1990) (citation omitted); *see* 38 U.S.C. § 101 (2012) (providing definitions, but leaving "claim" and "application" undefined). In light of this congressional silence, the enactment of 38 U.S.C. § 5102(b) and (c) do not limit the VA's discretion in the manner American Legion asserts. *See, e.g., United States v. Home Concrete & Supply, LLC*, 132 S. Ct. 1836, 1843 (2012) (plurality opinion) ("[A] statute's silence or ambiguity as to a particular issue means that Congress has not directly addressed the precise question at issue (thus likely delegating gap-filling power to the agency)." (internal quotation marks and citation omitted)); *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 222 (2009) ("It is eminently reasonable to conclude that [a statute's] silence is meant to convey nothing more than a refusal to tie the agency's hands. . . .").

### 2. Amended 38 C.F.R. Part 3, Requiring that Claims Be Initiated Via a Standard VA Form Is Consistent with 38 U.S.C. §§ 501(a)(2) and 5110(a)(1)

The statute is not only silent as to the definition of "application," but affirmatively grants "[t]he Secretary . . . authority to prescribe all rules and regulations . . . including—the *forms of application* by claimants under such laws." 38 U.S.C. § 501; *see also id.* § 5101(a)(1) ("A specific claim *in the form prescribed by the Secretary* . . . must be filed in order for benefits to be paid. . . ." (emphasis added)); *Mansfield v. Peake*, 525 F.3d 1312, 1317 (Fed. Cir. 2008) ("Congress has provided the VA with authority to establish the requirements for 'claims' for veterans' benefits."). Where Congress has "express[ly] delegat[ed] authority to the agency to elucidate a specific provision of the statute by regulation," those "legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 843–44 (footnote omitted).

American Legion contends the "VA's elimination of informal effective-date placeholders runs contrary to Con-

gress'[s] overarching purpose in enacting the veterans' benefit laws: maintaining a claimant-friendly, non-adversarial process for providing service-related benefits to veterans and their families." American Legion (15-7061) Br. 34. Accordingly, it asserts that the new and amended regulations under 38 C.F.R. Part 3 are arbitrary and capricious because the VA: "(1) has failed to establish a rational connection between its requirement that initial submissions be on standard forms and its asserted objectives; and (2) has not adequately considered the [Final] Rule's impact on the veteran population." *Id.* at 39 (footnote omitted); *see also id.* at 38 (asserting the Final Rule is likely to disproportionately impact veterans for whom "it will be impossible to access [the] VA's electronic platform or . . . understand the requirements [the] VA is imposing").

The VA's stated reason for favoring standard claims forms is sufficient to show that the Final Rule's standard form requirement is rational. We note that the VA is in a better position than this court to evaluate inefficiencies in its system. *See Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985) ("The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities."); *see also Hettleman v. Bergland*, 642 F.2d 63, 66–67 (4th Cir. 1981) ("[T]he government has an interest in seeing that the program [it administers] runs efficiently; . . . and the Secretary, as head of the responsible agency, is in the best position to promulgate uniform procedures." (internal quotation marks omitted)). The VA explained that, by standardizing the claim initiation process, it "will be able to cut processing time in identifying and developing claims, which will result in faster delivery of benefits to all veterans." Final Rule, 79 Fed. Reg. at 57,661; *see also id.* (The "rulemaking will allow [the] VA to decrease the processing time in identifying, clarifying, and processing non-standard submissions as claims or appeals since [the] VA

will be able to easily target and identify these claims or initiations of appeals based on the submitted form"); VA (15-7061) Br. 33 ("By controlling the possibility that any document might contain an overlooked claim, adjudicators can focus on developing and deciding the claims before them" instead of devoting time to "interpret[ing] the correct procedural identity of every claimant submission."). We decline to second guess the agency where, as here, its action has not been shown to be arbitrary or capricious. *See Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978) (asserting that courts generally will defer to an agency's construction of the statute it is charged with implementing and to the procedures adopted to implement the statute).

We also conclude the VA has adequately considered and addressed the impact on the veteran population. In issuing the Final Rule, the VA noted that "approximately half of the claimant population . . . [already] file[s] claims on a prescribed form." Final Rule, 79 Fed. Reg. at 57,661. To mitigate adverse effects on those in the remaining half who are not familiar with the standard form, the VA "delay[ed] the effective date of [the Final Rule] by 180 days . . . in order to perform robust outreach to inform and educate claimants and authorized representatives of this new standardized procedure." *Id.*

Additionally, it unlikely that the amended regulations, and in particular the intent to file provisions codified at 38 C.F.R. § 3.155(b)(1)(i)–(iii), will unduly burden veterans seeking to initiate claims. Although the Final Rule may disproportionately impact some of the nation's veterans who either do not have or possess limited Internet access, *see* J.A. 15-7061 204, J.A. 15-7061 207, this issue is attenuated because new 38 C.F.R. § 3.155(b)(1)(iii) allows claimants to initiate their claims with a phone call. Thus, practically speaking, the increase in burden on claimants is *de minimis*. If anything,

the Final Rule is more claimant-friendly because it increases the menu of options available to the initiating claimant. Accordingly, we find that the VA's amendment and new provisions to 38 C.F.R. Part 3, requiring claimants to originate their claims on a standard VA form is not "arbitrary, capricious, or manifestly contrary to statute." *Favreau v. United States*, 317 F.3d 1346, 1358 (Fed. Cir. 2002) (asserting that the court will defer to the agency's interpretation of a statute if the regulation is not arbitrary, capricious, or manifestly contrary to statute).

Lastly, as to American Legion's contention that the Final Rule does not accord with the overarching purpose of the veterans' benefit laws, we agree with the VA that "[c]onsistency with the 'statutory framework' plainly cannot be reduced to the single-factor test of whether the regulation is uniformly 'pro-claimant.'" VA (15-7061) Br. 8 (quoting *Sears v. Principi*, 349 F.3d 1326, 1330 (Fed. Cir. 2003)). As we explained in *Sears*, "we must take care not to invalidate otherwise reasonable agency regulations simply because they do not provide for a pro-claimant outcome in every imaginable case." 349 F.3d at 1331–32.

### B. Appeals: 38 C.F.R. § 20.201(a)(1) and (a)(4)

#### 1. 38 U.S.C. § 7105 Is Not Exhaustive

When an RO makes a decision that impacts the payment of benefits or the granting of relief, the RO typically provides claimants with a notice of the decision and of the procedure for appeal. *See* 38 U.S.C. § 5104 (2012); 38 C.F.R. § 3.103(b)(1) (2015). Claimants have one year to initiate review of the RO's decision with the Veterans Board by filing an NOD with the RO. 38 U.S.C. § 7105(b) (2012). As with the claim initiation process, the Final Rule requires claimants to initiate an appeal on a standard NOD form. 38 C.F.R. § 20.201(a)(1) (2015). Where multiple determinations are at issue, the Final Rule requires the claimant to identify "the specific determina-

tions with which the claimant disagrees." *Id.* § 20.201(a)(4).

Petitioners challenge § 20.201(a) both as to its standard form requirement and its requirement that claimants identify specific determinations of the notice of disagreement with which they disagree. Petitioners contend that we need only look at *Chevron* step one because "Congress has directly spoken to the precise question at issue," namely, whether the VA may add to the statutory requirements established in 38 U.S.C. § 7105 when determining what constitutes an NOD. 467 U.S. at 843.

Specifically, NOVA argues that "congressional intent requires that [an NOD] only contain two elements: [1] Expression of intent to appeal and [2] Disagreement with a determination," and that the statute therefore "clearly excludes imposing the use of a standardized form." NOVA (15-7025) Br. 8 (capitalization modified). VJG similarly argues "[nothing] in 38 U.S.C. [§] 7105 authorize[s] the Secretary to require . . . detailed 'technical pleading' in order to obtain appellate review of an adverse decision." VJG (15-7021) Br. 25. It adds that "requiring specification of the issues on appeal in [an NOD] *and* a formal appeal is redundant." *Id.* at 26 (*Comparing* 38 C.F.R. § 20.201(a)(4) (requiring identification of "the specific determinations with which the claimant disagrees"), *with* 38 U.S.C. § 7105(d)(3) ("The appeal should set out specific allegations of error of fact or law, such allegations related to specific items in the statement of the case.")). NOVA also argues that Congress's use of the term "notice of disagreement" in 38 U.S.C. § 7105, instead of the term "forms of application," which is used elsewhere in Title 38, directly addresses and precludes the VA's ability "to require a claimant to file a standardized form to initiate the appeal process." NOVA (15-7025) Br. 13.

Our decision in *Gallegos v. Principi* squarely addresses this issue.  *See* 283 F.3d 1309, 1313 (Fed. Cir. 2002).  In *Gallegos*, we determined that 38 U.S.C. § 7105

> does not . . . define [NOD] or suggest sufficient expressions to make a writing an NOD.  The statute also does not suggest that its specifications for an NOD—writing, one-year time limit from notice, etc.—are the only requirements for a valid NOD. . . .  In a general sense, the statute does not define an NOD. . . .    Therefore, under [*Chevron*,] [38 U.S.C. § 7105] *contains "a gap for an agency to fill" with regard to the definition of a legally valid NOD.*

283 F.3d at 1313 (quoting *Chevron*, 467 U.S. at 843) (emphasis added).

Consistent with our decision in *Gallegos*, we conclude 38 U.S.C. § 7105(b) is not exhaustive and does not restrict the VA's authority to fashion or articulate additional requirements claimants must satisfy in order to complete an NOD.  *See Gallegos*, 283 F.3d at 1314 ("Section 7105 does not preclude other requirements for an NOD.").

Lastly, with respect to NOVA's assertion that Congress's use of the term "notice of disagreement" instead of "forms of application" necessarily precludes the VA from mandating that NODs be completed on standard forms, we find nothing inherent in the term "notice" that precludes the VA from requiring such notice to be communicated on a standard VA form.  *See Notice,* Black's Law Dictionary (10th ed. 2014) (providing many context-dependent definitions (*i.e.*, "due notice," "implied notice," "notice filing") of the term "notice").

## 2.   The Final Rule's Imposition of a Mandatory NOD Identifying Specific Issues of Disagreement Is Not Arbitrary

A regulation is not arbitrary and capricious as long as there is a "'rational connection between the facts found and the choice made.'" *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 669 F.3d 1340, 1348 (Fed. Cir. 2012) (quoting *Motor Vehicles Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Petitioners assert that, by requiring standardized NOD forms in which claimants must enumerate specific points of disagreement, "[t]he Secretary . . . has improperly . . . burdened veterans with[] an adversarial benefits claims process—an act which is arbitrary, capricious, and contrary to Congressional mandate." VJG (15-7021) Br. 13. NOVA similarly argues that, by imposing "additional requirements" for the NOD, the "VA is exercising more authority than Congress delegated." NOVA (15-7025) Br. 8.

VJG further argues that under the Prior Regulation, the form required to perfect a formal appeal "contain[ed] a *box* for claimants to *check* if he or she 'want[ed] to appeal *all of the issues* listed on the [SOC].'" VJG (15-7021) Reply Br. 11 (quoting VA Form 9, § 9.A[5]) (internal quotation marks omitted). According to VJG, the "designation of 'all of the issues' contained in the decision document has long been sufficiently detailed for the Secretary to accept as 'specific allegations of error of fact or law' pur-

---

[5]   The VA previously required this form to perfect a *formal* appeal. *See* Dep't of Veterans Affairs, VA Form 9: Appeal to Board of Veterans' Appeals, *available at*, http://www.va.gov/vaforms/va/pdf/VA9.pdf. As to substantive appeals, the VA will continue to use Form 9 upon the implementation of the Final Rule, as required under 38 C.F.R. § 20.202.

suant to 38 U.S.C. [§] 7105(d)(3)." *Id.*; *see also id.* at 12 (asserting that the VA's acceptance of "a blanket designation of 'all of the issues' in a 'substantive appeal' form (i.e., VA Form 9)" necessarily means the VA must also "accept *at least* that level of generality in an NOD").

We conclude that the requirement to use a standard form to identify the specific issues of disagreement, *see* 38 C.F.R. §§ 19.24, 20.201(a)(4) (2015), is rationally related to the adjudication of veterans' appeals. While we are not unsympathetic to Petitioners' contentions, those contentions are primarily derivative of the fact that the VA seeks to *change* the appeal initiation process, and do not persuasively explain why the change constitutes an unreasonable exercise of the VA's authority. The VA has adequately explained why its regulations are rational. The VA notes that under its Prior Regulations, "broad and unclear requirements" led to delays in appeals processing, Proposed Rule, 78 Fed. Reg. at 65,497, and that "use of the standardized NOD enables [agency] personnel to more quickly conduct targeted development and consideration of a veteran's appeal," *id.* at 65,498. The VA further points out that "[e]rrors in identifying NODs can complicate otherwise straightforward claims." *Id.* at 65,497. It asserts that the form must be mandatory because a standardized form's "positive impact would be greatly diluted" if even a few claimants did not make use of the form, because the VA would then "still be required to scour all claimant submissions and engage in the time-intensive interpretative exercise of determining whether a given document could be reasonably construed as an NOD." *Id.* at 65,498 (internal quotation marks omitted). And it stresses that timely consideration of appeals is facilitated by the specification of disagreements as early as possible. Final Rule, 79 Fed. Reg. at 57,685.

The VA's efficiency rationale is sufficient; the VA possesses a duty not only to individual claimants, but to the

effective functioning of the veterans compensation system as a whole. Moreover, because the VA possesses limited resources, these dual obligations may sometimes compel it to make necessary tradeoffs. *See Massachusetts v. EPA,* 549 U.S. 497, 527 (2007) ("[A]n agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities." (citation omitted)). Although the VA's mandatory standard form increases the burden to some claimants when initiating the appeals process, to the extent standardization augments the overall efficiency of the appeals process, individual claimants also reap its benefits.

We recognize Congress desired the veterans' benefits claim system to be as "informal and nonadversarial as possible." *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 323–24 (1985). However, because the agency's action is not arbitrary, capricious, or manifestly contrary to the statute, we uphold the Final Rule's amendment of 38 C.F.R. § 20.201(a)(1) and (a)(4), requiring claimants to initiate appeals on a standard VA form in which specific points of disagreement are identified. *See Rite Aid Corp. v. United States*, 255 F.3d 1357, 1358 (Fed. Cir. 2001) ("A regulation is manifestly contrary to the statute if it is outside the scope of the authority delegated under the statute.").

### C.  Duty to Develop Claims: 38 C.F.R. §§ 3.160(a)(3)–(4), and 19.24(b)

#### 1.  The Statute Does Not Directly Address Whether the VA Must Develop Claims Unrelated to the Claim Presented

Under the Final Rule, a "complete claim must identify the benefit sought," 38 C.F.R. § 3.160(a)(3) (2015), and include "[a] description of any symptom(s) or medical condition(s) on which the benefit is based," *id.* § 3.160(a)(4). Similarly, a complete NOD generally requires an identification of "[t]he claim to which the form

pertains," as well as "[a]ny information necessary to identify the specific nature of the disagreement" which, "[f]or compensation claims," includes an "enumerat[ion] [of] the issues or conditions for which appellate review is sought." *Id.* § 19.24(b).

Petitioners contend that because new 38 C.F.R. §§ 3.160(a)(3)–(4) and 19.24(b) place "restrictions on claims that are raised by record evidence but not specifically identified by the veteran, [they are] contrary to law." American Legion (15-7061) Br. 48 (capitalization omitted); *see also* VJG (15-7021) Br. 25 ("Following submittal of [an NOD], [the] VA is required to take such development or review action as it deems proper." (internal quotation marks and citation omitted)). Specifically, Petitioners contend that under 38 C.F.R. §§ 3.160(a)(3)– (a)(4) and 19.24(b), the VA is not required to "adjudicate benefits for any medical condition that is not specifically identified and that [the] VA deems 'unrelated to those particular claims'—no matter how apparent the condition is on the face of the record." American Legion (15-7061) Br. 51 (quoting Final Rule, 79 Fed. Reg. at 57,672). Similarly, VJG asserts the VA "abandoned" its "'longstanding practice to infer or identify and award certain benefits that a claimant has not expressly requested but that are related to a claimed condition and [where] there is evidence of record indicating entitlement.'" VJG (15-7021) Br. 19 (quoting Final Rule, 79 Fed. Reg. at 57,672). VJG further argues the Final Rule contravenes 38 U.S.C. § 5107(b) (2012), which directs the VA to consider "'*all* information and lay and medical evidence of record *in a case*'—not just evidence related to claimed conditions or specific claims." VJG (15-7021) Br. 21 (quoting 38 U.S.C. § 5107(b)). American Legion similarly argues the "VA may not limit its review and adjudication to medical conditions and symptoms that are expressly identified in the veteran's filings and conditions secondary to those." American Legion (15-7061) Br. 52

(citing *Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed. Cir. 2001)).

Both parties agree the VA is required to develop evidence *related* to the claim. The VA states, for example, that "under the [F]inal [R]ule, only an issue that has no factual, medical, or causal relationship to any of the symptoms or conditions identified on the standard form would not be considered part of the claim." VA (15-7061) Br. 42. However, it takes the position that, when an issue "bears no factual, causal, medical or other relationship to the issues that *were* presented for adjudication," the VA does not have a statutory duty to develop the evidence pertaining to that issue. *Id*. at 43. Petitioners, by contrast, interpret the VA's position to mean that the "VA will no longer look for or award claims only contained in the evidence no matter how sound, obvious or significant." VJG (15-7021) Br. 22 (internal quotation marks omitted). Similarly, American Legion asserts "[t]he implications of [the Final Rule]" are such that "[i]f a veteran files a disability claim based on PTSD but fails to mention in his application that he lost both legs during service, [the] VA . . . ha[s] no obligation to develop, adjudicate, or even inform the veteran of any benefits related to his amputations—even if those amputations are obvious on the face of the record and the VA adjudicator has actual knowledge of them." American Legion (15-7061) Br. 52.

Again, we "engage[] in the familiar two-step analytic process articulated in *Chevron*." *Hawkins v. United States*, 469 F.3d 993, 1000 (Fed. Cir. 2006). We first inquire "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. Here, the precise question at issue is whether 38 U.S.C. § 5107 requires the VA to develop evidence outside the scope of the claim at issue.

Section 5107(a) provides that "a claimant has the responsibility to present and support a claim for benefits."

38 U.S.C. § 5107(a) (2012). That is, § 5107 places responsibility on the *claimant* for presenting and supporting a claim. Petitioners, however, focus on subsection (b). That subsection is entitled "Benefit of the Doubt," and requires "[t]he Secretary [to] consider all information and lay and medical evidence of record in a case before the Secretary" and, having considered this evidence and found "an approximate balance of positive and negative evidence, . . . give the benefit of the doubt to the claimant." *Id.* § 5107(b).

Although Petitioners focus on the requirement that the Secretary "consider all information and lay and medical evidence of record," *see* VJG (15-7021) Br. 20 (quoting 38 U.S.C. § 5107(b)); American Legion (15-7061) Br. 52–53 n.26 (same), the context indicates this statutory command is directed at ensuring consideration of all *relevant* evidence, such that the VA resolves close cases in favor of the veteran. Contrary to Petitioners' assertion, it does not directly address whether the VA must develop evidence outside the scope of a pending claim. We therefore turn to *Chevron* step two, and ask whether the regulations in question are based on a reasonable interpretation of the statute. *See* 467 U.S. at 843.

2. The Final Rule Is a Reasonable Interpretation of the Statute and Does Not Alter the VA's General Practice of Identifying and Adjudicating Issues

"'[T]he power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.'" *Paralyzed Veterans of Am.*, 345 F.3d at 1340 (quoting *Chevron*, 467 U.S. at 843). In light of this principle, "the court may not . . . substitute its own construction of a statutory provision for a reasonable interpretation made by an agency." *Id.* (citation omitted).

We find the challenged portions of 38 C.F.R. §§ 3.160(a)(3)–(4) and 19.24(b) reflect a reasonable interpretation of the statute. In fact, the regulations do not substantively diverge from the VA's prior regulation; they do not alter the VA's general practice of identifying and adjudicating issues and claims that logically relate to the claim pending before the VA. *See* Final Rule, 79 Fed. Reg. at 57,672 ("Although the rule requires claimants to specify the symptoms or conditions on which their claims are based and the benefits they seek, it generally would not preclude the VA from identifying, addressing, and adjudicating related matters that are reasonably raised by the evidence of record which the claimant may not have anticipated or claimed. . . .").

We are even more convinced of this determination because, contrary to Petitioners' position, a veteran's claim is not extinguished if the unclaimed condition is not reflected in the claim presented to the VA because the claimant may file a new claim directed to the unrelated evidence. Therefore, we find that new 38 C.F.R. §§ 3.160(a)(3)–(4) and 19.24(b) of the VA's Final Rule requiring that claimants identify symptoms or medical conditions at a high level of generality is a permissible construction of the statute. *Chevron*, 467 U.S. at 843.

## CONCLUSION

We uphold the Final Rule, which generally requires that all claims and appeals originate on a standard VA form, and find that it does not contravene Congress's mandate that the VA has a duty to develop veterans' claims. For the foregoing reasons, the petitions are

**DENIED**