# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 19-2661

HERMAN O. BAILEY, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued July 27, 2020)                                    Decided January 6, 2021)

*Dvora Louria*, with whom *Alec Saxe* was on the brief, both of Providence, Rhode Island, for the appellant.

*Mark D. Gore*, with whom *William A. Hudson, Jr.*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Edward V. Cassidy, Jr.*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before BARTLEY, *Chief Judge*, and PIETSCH and TOTH, *Judges*.

BARTLEY, *Chief Judge*, filed the opinion of the Court. PIETSCH, *Judge*, filed a concurring opinion.

BARTLEY, *Chief Judge*: Veteran Herman O. Bailey appeals through counsel a March 1, 2019, Board of Veterans' Appeals (Board) decision denying entitlement to a disability evaluation in excess of 60% for residuals of prostate cancer. Record (R.) at 5-12.[1] This appeal, over which the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a), was referred to a panel of the Court, with oral argument, to address the scope of 38 C.F.R. § 4.115b, Diagnostic Code (DC) 7528 (malignant neoplasms of the genitourinary system), and whether—while VA is evaluating residuals of prostate cancer under DC 7528—a claimant must file a formal claim for secondary service connection to be compensated for certain other residuals of prostate cancer that are reasonably raised during the process.

---

[1] The Board also found that discontinuance of the 100% evaluation for prostate cancer was proper. R. at 6-10. Because Mr. Bailey has not challenged that portion of the Board decision, the appeal as to that matter will be dismissed. *See Pederson v. McDonald*, 27 Vet.App. 276, 281-86 (2015) (en banc) (declining to review the merits of an issue not argued and dismissing that portion of the appeal); *Cacciola v. Gibson*, 27 Vet.App. 45, 48 (2014) (same).

We hold that, under DC 7528, a single evaluation may be assigned for residuals of prostate cancer based only on voiding or renal dysfunction, whichever is predominant. Other residuals may be compensated under appropriate DCs not in § 4.115b if they are separately service connected as secondary to prostate cancer. We further hold that, pursuant to 38 C.F.R. § 3.155(d)(2), when entitlement to secondary service connection for non-voiding and non-renal residuals is raised while VA is evaluating service-connected prostate cancer, the claimant need not file a separate, formal claim for secondary service connection for those residuals. Instead, VA must consider those "complications" in connection with a properly initiated claim concerning the prostate cancer evaluation.

Because the Board failed to acknowledge and adjudicate Mr. Bailey's claims for secondary service connection for diarrhea and lower extremity lymphedema due to radiation treatment for prostate cancer, claims that were reasonably raised during VA's consideration of the proper evaluation level for service-connected residuals of prostate cancer, the Court will remand the diarrhea and lymphedema claims for development, if necessary, and adjudication. And because the Board likewise failed to adjudicate the issue of entitlement to a total disability evaluation based on individual unemployability (TDIU) that was also raised during VA's processing of the underlying prostate cancer residuals claim, the Court will also remand that issue to the Board for further proceedings.

## I. FACTS

Mr. Bailey served on active duty in the U.S. Army from August 1954 to October 1974. R. at 6, 1420-23. He was diagnosed with prostate cancer in March 2013, R. at 2253, and was treated with a course of radiation therapy that concluded in September 2013, R. at 711. Meanwhile, in April 2013, he filed a claim for service connection for prostate cancer, R. at 2260-62, which was granted by a VA regional office (RO) in August 2013 and evaluated as totally disabling, R. at 2194-99, 2204-09.

In September 2014, Mr. Bailey underwent a VA examination to assess the severity of his prostate cancer residuals. R. at 2166-70. The examiner found that prostate cancer was in remission and noted the veteran's complaints of urinary symptoms requiring the use of five to six absorbent pads per day. R. at 2167-68.

The next month, the RO proposed to reduce Mr. Bailey's total evaluation for prostate cancer to 60% based on the predominant symptom of voiding dysfunction. R. at 2140-43. The veteran timely objected to the reduction, R. at 2116-17, and in May 2015, he submitted a prostate cancer disability benefits questionnaire (DBQ) reflecting, among other complaints, frequent bowel movements, diarrhea, and swelling of the ankles and feet, R. at 1963. In November 2015, he was diagnosed with lymphedema of the lower extremities. R. at 508, 511. The next month, the RO implemented the proposed reduction to 60%, R. at 1798-803, and, in February 2016, the veteran timely filed a Notice of Disagreement (NOD) with that decision, R. at 1095-97.

Mr. Bailey underwent another VA examination later that month, the report of which was produced in March 2016.[2] R. at 1292-304. The examiner recorded the veteran's complaints of "diarrhea following external beam radiation" and explained: "If the veteran claims a rectal/anal condition as the result of radiation[,] it wou[l]d be wise that he undergo a . . . colonoscopy for indication of 'radiation proctitis' in order that the procedure report be in hand at the time of a possible future DBQ rectum/anus exam." R. at 1295. The examiner then noted the veteran's report of lymphedema of the lower extremities "as the result of radiation of the prostate," which "prevented him from working at a desk for more than a few minutes at a time" and caused him to lose his security clearance as a policy analyst for the Department of State. *Id*. The examiner stated: "If the conten[]tion for lymphedema being caused by radiation of the prostate needs [to] be [pursued], a DBQ arteries/vein exam is in order." *Id*.

In September 2017, the RO issued a Statement of the Case continuing the 60% evaluation for residuals of prostate cancer based on voiding dysfunction, R. at 775-804, and the veteran perfected an appeal to the Board the following month, R. at 754-70.

In January 2019, Mr. Bailey filed a claim with the RO for service connection for various disabilities, R. at 524-28, as well as an application for TDIU due to prostate cancer and "secondary" lower extremity lymphedema, R. at 529-30. He attached to those filings a May 2018 private medical opinion attributing his lymphedema to radiation treatment for prostate cancer. R. at 517.

In March 2019, the Board issued the decision currently on appeal, which determined that discontinuance of the 100% evaluation for residuals of prostate cancer was proper and denied an evaluation in excess of 60% for that condition. R. at 4-12. The Board found that the veteran's

---

[2] For the sake of clarity, the Court will hereafter refer to this examination as the March 2016 VA examination.

3

predominant residual of prostate cancer was voiding dysfunction and that a 60% evaluation under DC 7528 was warranted because the evidence established that he changed absorbent materials more than four times per day. R. at 10-11. The Board further noted the veteran's reports to the March 2016 VA examiner of diarrhea and lymphedema due to prostate cancer, but stated that "the examiner explained that these contentions, if further explored, would be characterized as due to radiation treatment, rather than as considered to be a residual of the prostate cancer." R. at 11-12. The Board continued: "The rating schedule does not contemplate these symptoms/disabilities when evaluating the residuals of prostate cancer. In fact, the rating schedule is specific in that it directs renal and voiding dysfunctions to be rated, only." R. at 12. The Board therefore declined to factor diarrhea and lymphedema into its evaluation of the veteran's prostate cancer residuals. *Id*. Mr. Bailey timely appealed that decision to the Court the following month.

Three months later, in July 2019, the RO issued a rating decision granting service connection for right and left lower extremity lymphedema secondary to service-connected prostate cancer residuals and assigned a 10% evaluation for each extremity effective January 30, 2019, the date the veteran filed his formal claim for lymphedema. Appellant's Brief (Br.), Exhibit (Ex.) 1. The RO also deferred a decision on TDIU pending further development. *Id*. The RO ultimately decided that issue in September 2019, granting entitlement to TDIU effective January 30, 2019, the date the veteran filed his TDIU application. Appellant's Br., Ex. 2.

Less than a year later, in June 2020, Mr. Bailey filed a decision review request supplemental claim seeking earlier effective dates for his lymphedema evaluations and TDIU, Appellant's July 17, 2020, *Solze* Notice, which the RO denied in July 2020, Appellant's July 23, 2020, *Solze* Notice. The RO explained that, although lymphedema of the lower extremities was diagnosed in 2015, earlier effective dates for those conditions could not be awarded because "it was not claimed until January 30, 2019." *Id*. at 5-6. The RO also found that an effective date earlier than January 30, 2019, was not warranted for the award of TDIU because "there was no indication that service[-]connected disabilities were preventing employment" prior to that date. *Id*. at 5.

## II. THE PARTIES' ARGUMENTS

The primary dispute in this case arises from the parties' disagreement as to whether the Board, in its consideration of the proper evaluation for service-connected residuals of prostate

4

cancer, was required to address entitlement to additional compensation for diarrhea and lower extremity lymphedema, which the evidence of record suggested was related to radiation treatment for prostate cancer.

Mr. Bailey argues that the Board was obligated to address those reasonably raised issues and that it erred in narrowly construing DC 7528 to preclude compensation for diarrhea and lymphedema. Appellant's Br. at 10-24. Specifically, he contends that the Board's interpretation of DC 7528 as prohibiting compensation for diarrhea and lymphedema was inconsistent with the plain language of § 4.115b, VA's duty to maximize benefits and award separate evaluations when appropriate, and internal guidance in VA's *Adjudication Procedures Manual* (M21-1) that directs adjudicators to consider the non-voiding and non-renal residual of erectile dysfunction when it is reasonably raised in connection with a prostate cancer claim. *Id*. at 11-14, 19. Mr. Bailey also asserts that, even if the Board's interpretation of DC 7528 was correct, the Board was nevertheless required to adjudicate entitlement to additional compensation for diarrhea and lymphedema, either via secondary service connection for those conditions or as complications of treatment for prostate cancer pursuant to § 3.155(d)(2). *Id*. at 14-16, 19-24. He argues that he was prejudiced by the Board's failure to do so because, had it addressed those issues, it may have found that he was entitled to compensation for diarrhea under 38 C.F.R. § 4.114, DCs 7319 (irritable colon syndrome) or 7323 (ulcerative colitis), *id*. at 16-18, and for lymphedema of each lower extremity under 38 C.F.R. § 4.104, DC 7121 (post-phlebitic syndrome), *id*. at 20-21. He requests that the Court set aside the Board decision and remand for consideration of entitlement to compensation for diarrhea in the first instance, *id*. at 18, 24; and for lymphedema for the period prior to January 30, 2019, *id*. at 24, 27.

The Secretary responds that Mr. Bailey misreads the Board decision, which did not find that compensation was unavailable for diarrhea or lymphedema, but only that those issues were not part of the claim on appeal. Secretary's Br. at 5-12. Relying on *Sellers v. Wilkie*, 965 F.3d 1328 (Fed. Cir. 2020), *Manzanares v. Shulkin*, 863 F.3d 1374 (Fed. Cir. 2017), *Ellington v. Peake*, 541 F.3d 1364 (Fed. Cir. 2008), and the current versions of 38 C.F.R. §§ 3.155 and 3.160, the Secretary asserts that the Board was not obligated to address entitlement to compensation for those conditions as secondary to treatment for prostate cancer because (1) entitlement to secondary service connection is not inherently part of the evaluation for an already service-connected disability, and (2) although the veteran filed a formal claim for secondary service connection for

5

those conditions in January 2019, those claims had not reached the Board by the time of its March 2019 decision. *Id*. at 6-9; Secretary's Notice of Supplemental Authority (Supp. Auth.) at 1. The Secretary contends that the veteran's arguments to the contrary not only violate *Sellers*, *Manzanares*, and *Ellington*, but also fatally undermine the purpose of §§ 3.155 and 3.160 by eliminating VA's formal claim requirements. Secretary's Br. at 10-11; Secretary's Notice of Supp. Auth. at 1. Finally, the Secretary argues that any alleged error as to the Board's handling of the lymphedema matter was mooted by the RO's July 2019 grant of secondary service connection for lymphedema of the right and left lower extremities and the veteran's June 2020 decision review request supplemental claim that challenged the effective dates assigned for those awards. *Id*. at 13.

Mr. Bailey disputes these contentions and, in addition to reiterating many of the arguments from his principal brief, *see* Reply Br. at 1-10, asserts that the lymphedema matter remains live and justiciable because the RO only partially granted the benefit sought for that condition, *id*. at 10-11. He argues that, had the Board properly considered secondary service connection for lymphedema in the context of the underlying prostate cancer residuals claim, VA would have awarded effective dates commensurate with the March 2016 VA examination that reasonably raised that issue, rather than the January 2019 formal claim. *Id*. at 10-11.

The parties also disagree on a distinct but related issue: whether the Board's failure to adjudicate entitlement to TDIU was mooted by the RO's September 2019 grant of that benefit effective January 30, 2019. Although the Secretary concedes that the Board erred in not addressing entitlement to TDIU in the first instance, he argues that, similar to lymphedema, that error was mooted by the RO's subsequent grant of TDIU. Secretary's Br. at 14-18. Mr. Bailey responds, as he did before, that the issue is not moot because the RO, by assigning an effective date of January 30, 2019, only partially granted the benefit sought. Reply Br. at 10-12. He therefore asks the Court to remand the issue to the Board for consideration of an earlier effective date. *Id*. at 13.

6

# III. ANALYSIS

## A.  DC 7528

We first address Mr. Bailey's arguments regarding the scope of DC 7528.  Whether DC 7528 permits or prohibits separate evaluation [3] of non-voiding and non-renal dysfunction of prostate cancer such as diarrhea and lymphedema is a question of regulatory interpretation that the Court reviews de novo.  *See Langdon v. Wilkie*, 32 Vet.App. 291, 296 (2020).  "Regulatory interpretation begins with the language of the regulation, the plain meaning of which is derived from its text and its structure." *Petitti v. McDonald*, 27 Vet. App. 415, 422 (2015).  If the meaning and scope are clear from that investigation, then the plain meaning controls and "that is 'the end of the matter.'"  *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) (quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994)).  If not, the Court may look to other sources, including the history and purpose of the regulation containing the DC, to discern its meaning. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019).

With this framework in mind, we turn to the text of § 4.115b, the regulation governing evaluation of disabilities of the genitourinary system.  DC 7528, which is found in § 4.115b, provides a 100% evaluation for malignant neoplasms of the genitourinary system.  38 C.F.R. § 4.115b, DC 7528 (2020).  The Note to that DC directs that, "[f]ollowing the cessation of surgical, X-ray, antineoplastic chemotherapy or other therapeutic procedure, the rating of 100[%] shall continue with a mandatory VA examination at the expiration of six months. . . .  If there has been no local reoccurrence or metastasis, rate on residuals as voiding dysfunction or renal dysfunction, whichever is predominant." *Id*.

The conditional sentence at the end of the Note to DC 7528 is clear and unambiguous.  It presents only two evaluation options when there has been no local reoccurrence or metastasis of a malignant neoplasm of the genitourinary system such as prostate cancer: Evaluate residuals of that neoplasm on the basis of either (1) voiding dysfunction or (2) renal dysfunction, whichever is predominant.  As used in this DC, "rate on" means to evaluate on the basis of, with the plural "residuals" indicating that the adjudicator is to consider multiple residuals of the malignant

---

[3] To be clear, the Court is using "separate evaluation" in this decision as a term of art to refer to VA's practice of "rat[ing] a single disability under multiple diagnostic codes without pyramiding." *Morgan v. Wilkie*, 31 Vet.App. 162, 164 (2019); *see generally Lyles v. Shulkin*, 29 Vet.App. 107, 113 (2017); *Esteban v. Brown*, 6 Vet.App. 259, 261 (1994).  The veteran's arguments regarding entitlement to additional compensation for diarrhea and lymphedema on other bases is addressed in part III.B, below.

neoplasm when assigning that evaluation. *See Johnson v. McDonald*, 762 F.3d 1362, 1365 (Fed. Cir. 2014) (holding that use of the plural "disabilities" in a regulation required consideration of multiple disabilities when assigning an extraschedular evaluation). However, the limiting phrase "as voiding dysfunction or renal dysfunction, whichever is predominant," conveys that the evaluation for such residuals under DC 7528 must be based on only the more predominant of the voiding or renal dysfunction, to the exclusion of all other residual dysfunctions. That limitation effectively forecloses the veteran's argument that entitlement to separate evaluations for diarrhea and lower extremity lymphedema were part and parcel of his appeal of the prostate cancer residuals evaluation assigned under DC 7528, because it proscribes consideration of non-voiding and non-renal dysfunctions when assigning an evaluation under that DC.

This reading of DC 7528 is confirmed by the structure of § 4.115b, which directs the adjudicator to a companion regulation, 38 C.F.R. § 4.115a, for the specific evaluation levels to be assigned for the various degrees of voiding and renal dysfunction. The preface to § 4.115a emphasizes that, "[w]here diagnostic codes refer the decisionmaker to these specific areas [of] dysfunction, *only* the predominant area of dysfunction shall be considered for rating purposes." 38 C.F.R. § 4.115a (2020) (emphasis added). The regulation then acknowledges that "the areas of dysfunction described below"—i.e., voiding dysfunction, renal dysfunction, and urinary tract infections—"do not cover all symptoms resulting from genitourinary diseases" and instructs that "specific diagnoses may include a description of symptoms assigned to that diagnosis" to show that those symptoms are part of the service-connected genitourinary disability even though they have not formed the basis of the assigned evaluation. *Id*. Thus, for purposes of DC 7528, the preface to § 4.115a reinforces the notion that non-voiding and non-renal residuals of a malignant neoplasm of the genitourinary system are not to be factored into an evaluation under that DC.

Although the text and the structure of the relevant regulations reveal the plain meaning of DC 7528, we note that the history and the purpose of the DC also accord with this interpretation. The precursor to current § 4.115b, DC 7528, provided that, when there was no local recurrence or metastasis of a malignancy of the genitourinary system after the cessation of cancer treatment, evaluation would "be made on residuals," without any limit on the type of residual to be evaluated. 38 C.F.R. § 4.115a, DC 7528 (1993). When VA proposed the current rating formula for genitourinary disabilities in December 1991, it indicated that the purpose of the general rating formula was not only to provide a greater range of evaluation levels for those disabilities, but also

8

to "evaluate each disability as one of three general dysfunctions of the genitourinary system." Schedule for Rating Disabilities; Genitourinary System Disabilities, 56 Fed. Reg. 61,216, 61,217 (Dec. 2, 1991) (proposed rule). In response to comments that the general rating formula was too narrow because it did not fully account for the "residual damage to the genitourinary system from radiation treatment," VA reiterated that "residual impairment of the genitourinary system will [] be rated as either voiding or renal dysfunction" and that "other complications are subject to service connection under [§] 3.310(a) of this chapter," not as part of the evaluation assigned under the relevant genitourinary DC in § 4.115b.[4] Schedule for Rating Disabilities; Genitourinary System Disabilities, 59 Fed. Reg. 2,523, 2,525-26 (Jan. 18, 1994) (final rule). And when VA proposed to amend §§ 4.115a and b again in October 2019, it explained that a change to § 4.115a was necessary to clarify that although "distinct disabilities may be assigned separate evaluations under this section, consistent with the anti-pyramiding provisions in [38 C.F.R.] § 4.14," § 4.115a was still "intended to reflect that when a particular diagnostic code refers to multiple dysfunctions, *only the predominant dysfunction will be evaluated for that diagnostic code*." Schedule for Rating Disabilities; The Genitourinary Diseases and Conditions, 84 Fed. Reg. 55,086, 55,086-87 (Oct. 15, 2019) (proposed rule) (emphasis added). Mr. Bailey's proposed interpretation is inconsistent with this history, contravenes one of the express purposes of the general rating formula for genitourinary disabilities, and improperly attempts to convert that DC back into its pre-amendment version, which permitted evaluation based on all residuals.

In sum, the meaning and scope of DC 7528 is clear from its text and structure, and that plain meaning is confirmed by its history and purpose. DC 7528 directs that evaluation of residuals of a malignant neoplasm of the genitourinary system be based solely on voiding or renal dysfunction, whichever is predominant; other non-voiding and non-renal dysfunctions do not factor into a schedular evaluation under that DC. As a result, entitlement to separate evaluations for non-voiding and non-renal dysfunctions related to prostate cancer cannot be considered part and parcel of a claim as to the proper evaluation level for prostate cancer residuals under DC 7528. *See Kisor*, 139 S. Ct. at 2415 (explaining that, where "uncertainty does not exist" after examining the text, structure, history, and purpose of a regulation, "[t]he regulation then just means what it means—and the court must give it effect, as the court would any law").

---

[4] More on this in section III.B, below.

Mr. Bailey's arguments for a broader construction of DC 7528 are unavailing. First, although DC 7528 does not contain an express prohibition against separate evaluations like some other DCs, *see Lyles*, 29 Vet.App. at 114 (listing examples), §§ 4.115a and b, read together, clearly direct that evaluation of prostate cancer residuals under DC 7528 is to be based on voiding or renal dysfunction alone. Allowing separate evaluation of non-voiding and non-renal residuals of prostate cancer (absent a separate grant of service connection for those residuals) would contravene the text, structure, history, and purpose of DC 7528, a result that is to be avoided. *See Hembree v. Wilkie*, 33 Vet.App. 1, 6 (2020). Second, contrary to the veteran's contention, this implicit prohibition against separate evaluation is not inconsistent with 38 C.F.R. § 4.25(b) because that regulation instructs that "the disabilities arising from a single disease entity . . . are to be rated separately," "[e]xcept as otherwise provided in [the rating] schedule." Sections 4.115a and b cumulatively constitute such an exception. Finally, this prohibition does not violate VA's general duty to maximize benefits—including the assignment of separate evaluations or the award of secondary service connection, *see Morgan*, 31 Vet.App. at 164; 38 C.F.R. § 3.103(a) (2020)—or the M21-1 provision permitting secondary service connection for erectile dysfunction related to prostate cancer treatment, M21-1, III.iv.4.I.2.c, because, as explained in detail in section III.B below, VA may still be required to account for and ultimately compensate a veteran for non-voiding and non-renal dysfunction associated with prostate cancer treatment. The method for doing so, however, is not via evaluation under DC 7528, as the veteran alleges.

Accordingly, the Court concludes that the Board did not err in construing DC 7528 to exclude evaluation of the veteran's non-voiding and non-renal dysfunctions of diarrhea and lower extremity lymphedema. R. at 12; *see Langdon*, 32 Vet.App. at 296. And because compensation for diarrhea and lymphedema was not available under DC 7528, the Court agrees with the Secretary that the issue of entitlement to compensation for those residuals under DC 7528 was not "part and parcel" of, or otherwise necessarily inherent in, the veteran's appeal of the reduced prostate cancer residuals evaluation assigned under that DC. Accordingly, the Court will affirm the portion of the Board decision that denied entitlement to a disability evaluation in excess of 60% for residuals of prostate cancer under that DC.

## B. "Complications" of Prostate Cancer Treatment

This conclusion, however, is not the end of the matter. We turn now to Mr. Bailey's arguments that, regardless of the scope of DC 7528, the Board was required to address entitlement

to additional compensation for diarrhea and lower extremity lymphedema under other DCs because secondary service connection for those conditions was reasonably raised by the record during the course of his appeal before VA. *See Robinson v. Peake*, 21 Vet.App. 545, 552 (2008) (requiring the Board to address all issues explicitly raised by the claimant or reasonably raised by the record), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009). Before addressing the merits of that argument, we must satisfy ourselves that those issues were reasonably raised by the record as the veteran asserts.

### 1. Secondary service connection was reasonably raised by the record

It is well established that a veteran may be granted secondary service connection for a disability caused or aggravated by treatment for a service-connected disability. *See, e.g.*, *Wanner v. Principi*, 17 Vet.App. 4, 8 (2003) (secondary service connection for tinnitus caused by medication used to treat service-connected tuberculosis), *rev'd on other grounds*, 370 F.3d 1124 (Fed. Cir. 2004); *Velez v. West*, 11 Vet.App. 148, 157 (1998) (discussing, but ultimately dismissing for lack of jurisdiction, a claim for secondary service connection for a gastrointestinal disorder caused by pain medication taken for a service-connected shoulder disability). Indeed, the RO in this case ultimately granted secondary service connection for lymphedema of the lower extremities as a result of radiation treatment for prostate cancer. Appellant's Br., Ex. 1. The parties disagree, however, as to whether entitlement to secondary service connection for diarrhea and lower extremity lymphedema was reasonably raised by the record. Appellant's Br. at 14-16, 19-24; Secretary's Br. at 9-10. The Court agrees with the veteran that those issues were raised. *See Barringer v. Peake*, 22 Vet.App. 242, 244 (2008) (holding that the Court has jurisdiction to review whether the Board erred in failing to address a reasonably raised issue).

The March 2016 VA examiner noted Mr. Bailey's reports of "diarrhea following external beam radiation," suggested that those complaints may reflect radiation proctitis, and advised the veteran to undergo a colonoscopy to evaluate those complaints so that he would have test results "in hand at the time of a possible future DBQ rectum/anus exam." R. at 1295. The examiner also recorded the veteran's complaints of lymphedema of the lower extremities "as the result of radiation of the prostate" and explained that, "[i]f the contention for lymphedema being caused by radiation of the prostate needs to be pursued, a DBQ arteries/vein exam is in order." *Id.* (misspellings corrected). The Court concludes that these statements by the March 2016 VA examiner, which document the veteran's assertions that the diarrhea and lower extremity

11

lymphedema were caused by radiation treatment for prostate cancer, acknowledge the medical feasibility of those theories, and discuss steps that the veteran might take to obtain disability compensation for those conditions, reasonably raised entitlement to secondary service connection for those conditions. *See Fountain v. McDonald*, 27 Vet.App. 258, 275-76 (2015) (concluding that entitlement to secondary service connection was reasonably raised by the record).

## 2. *The Meaning of "Complications" in § 3.155(d)(2)*

Having found those issues reasonably raised, we proceed to the question of whether the Board was obligated to address secondary service connection in its decision. Mr. Bailey argues that it was, citing longstanding precedent that requires VA to develop and adjudicate issues reasonably raised by the record. Appellant's Br. at 14, 18-20 (citing *Schroeder v. West*, 212 F.3d 1265, 1271 (Fed. Cir. 2000); *Robinson*, 21 Vet.App. at 552). The Secretary responds that VA's obligation to address reasonably raised issues does not extend to *separate claims* for benefits, including claims for secondary service connection, that were not initiated on the standardized forms prescribed by the Secretary. Secretary's Br. at 7. According to the Secretary, because secondary service connection for diarrhea and lymphedema were not part of Mr. Bailey's claim for the proper evaluation for his already service-connected prostate cancer residuals, and because the veteran did not file a formal claim for secondary service connection for either condition within the context of this appeal stream, the Board was not required to address entitlement to secondary service connection in its decision. *Id*. at 5-13.

The Secretary's position is based on the 2015 amendments to §§ 3.155 and 3.160, VA's claims-requirement regulations. Prior to March 24, 2015, the effective date of those amendments, VA accepted both formal and informal claims for benefits. *See Norris v. West*, 12 Vet.App. 413, 416 (1999). An informal claim was defined as "[a]ny communication or action, indicating an intent to apply for one or more benefits under the laws administered by [VA]." 38 C.F.R. § 3.155 (2014); *see* 38 C.F.R. § 3.160(a) (2014) (referring to § 3.155 for the definition of informal claims). Under the pre-amendment system, when VA received an informal claim and a formal claim had not yet been filed, VA sent the claimant a formal application for benefits; if that application was received within one year, it was considered filed as of the date of receipt of the informal claim. 38 C.F.R. § 3.155 (2014).

VA amended §§ 3.155 and 3.160 in 2015 to, among other things, "eliminate the concept of an 'informal' claim, and replace it with a process that would incentivize the submission of claims

in a format more amenable to efficient processing, while still allowing veterans to receive favorable effective date treatment similar to that available under the current 'informal' claim rule." Standard Claims and Appeals Forms, 78 Fed. Reg. 65,490, 65,490 (Oct. 31, 2013) (proposed rule). Specifically, VA revised § 3.155 to state that "[a] complete claim is required for all types of claims," 38 C.F.R. § 3.155(d)(1) (2020), and § 3.160 to specify that a claim is "complete" when, in relevant part, it is submitted "on an application form prescribed by the Secretary," 38 C.F.R. § 3.160(a) (2020).

As explained above, the record reasonably raised the issues of entitlement to secondary service connection for diarrhea and lower extremity lymphedema in March 2016—i.e., after the amendments to §§ 3.155 and 3.160 became effective in March 2015. It is undisputed that, prior to January 2019, Mr. Bailey had not filed a formal claim on the prescribed application form for those secondary conditions; however, it is also undisputed that he properly initiated a dispute as to VA's December 2015 reduction of his evaluation for prostate cancer residuals under DC 7528. Mr. Bailey therefore seeks to tie the secondary diarrhea and lymphedema claims to the properly initiated prostate cancer residuals claim, using § 3.155(d)(2) as the hook.

Section 3.155(d)(2) provides, in relevant part, that VA will

consider all lay and medical evidence of record in order to adjudicate entitlement to benefits for the claimed condition as well as entitlement to any additional benefits for complications of the claimed condition, including those identified by the rating criteria for that condition in 38 CFR Part 4, VA Schedule for Rating Disabilities.

38 C.F.R. § 3.155(d)(2). Like the scope of DC 7528, whether diarrhea and lower extremity lymphedema claimed as the result of radiation treatment for prostate cancer qualify as complications of the service-connected prostate cancer residuals for purposes of § 3.155(d)(2) is a question of regulatory interpretation that the Court addresses de novo, guided by the principles set forth in *Kisor*.[5]

As above, we begin with the text of the relevant regulation. Section 3.155(d)(2) does not define "complications," nor does any accompanying regulation, such as § 3.160. In the absence of an express regulatory definition, the Court may look to dictionaries to determine the term's ordinary meaning. *See Perrin v. United States*, 444 U.S. 37, 42 (1979) ("[U]nless otherwise

---

[5] Unlike our concurring colleague, we think it is necessary to determine the meaning of "complications" in § 3.155(d)(2) to answer this question and to fully address the parties' arguments.

defined, words will be interpreted as taking their ordinary, contemporary, common meaning."); *Brown v. Wilkie*, 32 Vet.App. 226, 230-31 (2019). General use dictionaries define "complication," in the context of medicine, as either "a secondary disease or condition developing in the course of a primary disease or condition," MERRIAM-WEBSTER'S DICTIONARY, https://www.merriam-webster.com/dictionary/complication, or as "a secondary disease or condition aggravating an already existing one," OXFORD ENGLISH DICTIONARY, https://www.lexico.com/en/definition/complication. Moreover, a particularly relevant government dictionary of cancer terms specifies that a "complication" is "a medical problem that occurs during a disease, or after a procedure or treatment" that "may be caused by the disease, procedure, or treatment." NAT'L INSTS. OF HEALTH, NAT'L CANCER INST. (NCI), NCI'S DICTIONARY OF CANCER TERMS, https://www.cancer.gov/publications/dictionaries/cancer-terms/def/complication; *see Theiss v. Principi*, 18 Vet.App. 204, 210 (2004) (consulting specialized dictionaries to discern a term's meaning).

These dictionary definitions connote a causal or aggravative relationship between the primary disease or condition and the resulting disease or condition, including as due to treatment for the underlying disease or condition. This is the same relationship that exists between primary and secondarily service-connected disabilities. *See Allen v. Brown*, 7 Vet.App. 439, 448 (1995) (en banc) (holding that secondary service connection shall be granted for disabilities caused or aggravated by service-connected disabilities). Indeed, the Secretary conceded at oral argument that "complications" in § 3.155(d)(2) "does refer to things like secondary service connection," consistent with its use in other portions of the Rating Schedule. Oral Argument, 1:01:23-40, https://www.youtube.com/watch?v=m9zpFrioAV4 (favorably comparing "complications" in § 3.155(d)(2) to "complications" of diabetes, which are subject to secondary service connection under 38 C.F.R. § 4.119, DC 7913, Note 1). Thus, the Court concludes that the ordinary meaning of "complications" in § 3.155(d)(2) encompasses disabilities caused or aggravated by treatment for a service-connected disability.

The history and purpose of §§ 3.155(d)(2) and 3.160 support this conclusion. As outlined above, under the prior version of § 3.155, VA was obligated to develop and adjudicate an informal claim for secondary service connection for a disability if such was reasonably raised in the course of a claim for an increased disability evaluation for the primary disability. *See, e.g., Buckley v. West*, 12 Vet.App. 76, 85-85 (1998). When VA proposed the current amendments, it sought to do away with such informal claims for secondary service connection, expressly creating a new class

of claim—supplemental claims—that "must be initiated on standard forms."[6] Standard Claims and Appeals Forms, 78 Fed. Reg. at 65,496. However, in response to comments criticizing the proposed rule for potentially eliminating VA's duty to develop and adjudicate reasonably raised claims, VA withdrew the definition of supplemental claim from the final rule and replaced it with the complications sentence in § 3.155(d)(2). *See* Standard Claims and Appeals Forms, 79 Fed. Reg. 57,660, 57,674 (Sept. 25, 2014) (final rule).

In so doing, VA explained that the final rule did "not alter VA's general practice of identifying and adjudicating issues and claims that logically relate to and arise in connection with a claim pending before VA," highlighting secondary service-connection claims as benefits that would qualify as complications that would be developed and adjudicated under § 3.155(d)(2) "whether or not raised expressly by the claimant." *Id*. at 57,673. VA clarified that "identifying and adjudicating claims reasonably raised by the evidence of record [is] a pro-claimant practice meant to resolve claims without the need for unnecessary administrative action when VA is already actively developing and adjudicating a claim" and that maintaining this practice was consistent with the purpose of the amendments so long as it was "not[] construed as creating a rule or practice that the filing of evidence, without a claim for increase for a condition already service connected executed on a completed application, constitutes a claim for increase." *Id*. VA cautioned that requiring adjudicators to process secondary service-connection claims not initiated on the required form when no underlying claim for increase for the primary condition was already pending "would form a boundless exception to the requirement to file a complete claim for increase made explicit in § 3.155(d), and would be inconsistent with [the] explicit elimination of current [38 C.F.R.] § 3.157."[7] *Id*. In other words, VA anticipated and expressly permitted situations like Mr. Bailey's, where a formal claim concerning the primary disability's evaluation is pending, but chose to require the filing of a formal claim for secondary service connection when VA was not already processing a properly initiated claim as to the primary disability's evaluation.

---

[6] To be clear, this type of "supplemental claim," which VA proposed in 2013 but ultimately did not adopt, differs from the type of decision review request supplemental claim that Mr. Bailey filed in June 2020 as part of his appeal under the provisions of the Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. No. 115-55, 131 Stat. 1105 (Aug. 23, 2017). *See* 38 U.S.C. § 101(36).

[7] Prior to the 2015 amendments, § 3.157 authorized VA to accept certain types of medical examination or hospitalization reports as an informal claim for an increased evaluation or to reopen a previously denied claim. 38 C.F.R. § 3.157 (2014).

Caselaw from the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) and this Court is consistent with this reading of §§ 3.155(d)(2) and 3.160. For example, in *Veterans Justice Group, LLC (VJG), v. Sec'y of Veterans Affairs*, the Federal Circuit upheld as valid VA's amendments to §§ 3.155 and 3.160 and, as relevant to this appeal, noted that "the regulations do not substantively diverge from the VA's prior regulation; they do not alter the VA's general practice of identifying and adjudicating issues and claims that logically relate to the claim pending before the VA." 818 F.3d 1336, 1356 (Fed. Cir. 2016). As noted above, claims for secondary service connection for disabilities caused by treatment for an already service-connected disability logically relate to a claim for the proper evaluation level for the primary service-connected disability. Moreover, in *Morgan*, this Court held that "VA's duty to maximize benefits requires it to exhaust all schedular alternatives," including entitlement to secondary service connection, when evaluating a disability. 31 Vet.App. at 164. These precedents, which both postdate the amendments to §§ 3.155 and 3.160, support the notion that VA is obligated to develop and adjudicate claims for secondary service connection that are reasonably raised during the processing of a properly initiated claim as to the primary service-connected disability's evaluation level.

Contrary to the Secretary's contentions, Secretary's Br. at 6-11, nothing in the Federal Circuit's other decisions mandates a different result. The specific question at issue in *Manzanares* was "whether a claim for increased rating for any service-connected condition *necessarily includes* a claim for a secondary service-connected condition by virtue of 38 C.F.R. § 3.310(a)." 863 F.3d at 1375 (emphasis added). Although the Federal Circuit concluded that it does not, Mr. Bailey's appeal is not concerned with whether a regulatory provision makes a claim for secondary service connection part of every claim for service connection or increase for the primary disability. Rather, the evidence in this case reasonably raised the issue of secondary service connection for diarrhea and lower extremity lymphedema independent of the operation of § 3.310(a); thus, the Federal Circuit's holding in *Manzanares* that § 3.310(a) "cannot mean that primary claims for service connection or subsequent claims for increased ratings for primary conditions *necessarily* encompass later claims for secondary service connection" is inapposite. *Id*. at 1379 (emphasis added).[8] Significant to this appeal, *Manzanares* did not address the complications sentence of

---

[8] Indeed, *Manzanares* was primarily concerned with effective dates, not formal claim requirements, and its focus on effective date regulations illustrates this point. *Id*. at 1376-78 (analyzing 38 C.F.R. §§ 3.310(a), 3.400 (effective dates), and 3.156(b) (new and material evidence: pending claim)).

§ 3.155(d)(2) and, to the extent that the Federal Circuit discussed § 3.155(d)(2) at all, it did so only to reject the veteran's argument that secondary service connection was an ancillary benefit under that regulation. *Id*. at 1378. But § 3.155(d)(2) expressly distinguishes between ancillary benefits and complications under that regulation. 38 C.F.R. § 3.155(d)(2) (specifying that a claimant "may, but need not, assert entitlement to ancillary benefits at the time the complete claim is filed" and that VA "will also consider . . . entitlement to any additional benefits for complications of the claimed condition"). Therefore, *Manzanares* is not dispositive.

The Secretary's reliance on *Ellington* and *Sellers* is similarly misplaced. In *Ellington*, the Federal Circuit held that primary and secondary service-connection claims are distinct for effective date purposes, but it did not speak to whether a secondary service-connection claim, raised during VA's consideration of the evaluation level for the primary service-connected disability, must be initiated by a formal claim. *See* 541 F.3d at 1369-71. Nor did the Federal Circuit there address the regulatory interpretation question at issue here, as *Ellington* was decided seven years *before* the complications sentence was added to § 3.155(d)(2).

As for *Sellers*, although that decision post-dated the 2015 amendments to §§ 3.155 and 3.160, the Federal Circuit's holding that "a veteran's formal claim is required to identify the sickness, disease, or injuries for which compensation is sought, at least at a high level of generality," 965 F.3d at 1338, does not mean, as the Secretary suggests, that claims for secondary service connection cannot be reasonably raised during the processing of a formal claim regarding the appropriate evaluation level for the primary service-connected disability. To the contrary, in *Sellers* the Federal Circuit reiterated that, although the 2015 amendments to §§ 3.155 and 3.160 "substantially revised the claim initiation process," they did "'not alter the VA's general practice of identifying and adjudicating issues and claims that logically relate to the claim pending before the VA'" and "generally would not preclude the VA from identifying, addressing, and adjudicating related matters that are reasonably raised by the evidence of record which the claimant may not have anticipated or claimed.'" *Id*. at 1337 (quoting *VJG*, 818 F.3d at 1356). As explained above, this includes reasonably raised claims for secondary service connection for disabilities due to treatment for an already service-connected disability.

All in all, the text, history, and purpose of §§ 3.155(d)(2) and 3.160 indicate that VA is required to develop and adjudicate related claims for secondary service connection for disabilities that are reasonably raised during the adjudication of a formally initiated claim for the proper

17

evaluation level for the primary service-connected disability. *See Kisor*, 139 S. Ct. at 2415. To hold otherwise would be to allow VA to institute, through litigation, a more restrictive claims initiation process than it proposed and ultimately adopted through notice-and-comment rulemaking. The Court is simply not willing to allow VA to do so.

As applied to Mr. Bailey's case, § 3.155(d)(2) required VA to recognize, develop, and adjudicate his entitlement to secondary service connection for diarrhea and lower extremity lymphedema due to radiation treatment for prostate cancer once the March 2016 VA examination report raised those issues in the context of the formally initiated claim as to the proper evaluation level for service-connected prostate cancer residuals. Because the Board did not address those reasonably raised issues, it erred. *See Robinson*, 21 Vet.App. at 552.

### 3. Mootness & Remedy

One question still remains: What is the proper remedy for the Board's failure to adjudicate entitlement to secondary service connection for diarrhea and lower extremity lymphedema? The answer for the diarrhea claim is fairly straightforward. Where, as here, the Board fails to address a reasonably raised claim for secondary service connection, the appropriate remedy is to remand the claim to the Board for consideration of it in the first instance. *See Robinson*, 557 F.3d at 1362. Accordingly, the Court will remand the claim for secondary service connection for diarrhea due to treatment for prostate cancer for initial development and adjudication. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (holding that remand is the appropriate remedy "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate").

The remedy for the lymphedema claim is more complicated. As outlined above, the Secretary argues that any error in failing to address that claim was mooted and rendered harmless by the RO's July 2019 grant of secondary service connection and that an appeal of that decision is the proper avenue to obtain a higher evaluation or earlier effective date. Secretary's Br. at 13. We disagree.

In *Warren v. McDonald*, the Court held that, when there are two claim streams proceeding before VA simultaneously—one for service connection for a disability that the Board overlooks and one for a higher evaluation or earlier effective date for the same disability that has already been decided by the RO in a later separate claim stream because of the Board's oversight—the proper course of action is for the Board to decide the appeal of the overlooked service-connection

claim over which it had jurisdiction, which may impact the effective date for the already service-connected disability. 28 Vet.App. 214, 221 (2016). The Court explained that, although the RO decision could grant service connection based on the second claim stream, only a Board decision could resolve the first claim stream. The Court therefore remanded the case and directed the Board to adjudicate the first claim stream on the merits. *Id.* at 221-22.

The same outcome is warranted here. Mr. Bailey's appeal to the Board included entitlement to secondary service connection for lower extremity lymphedema, an issue that the Board has not yet addressed and that the RO could not have fully and finally resolved. Although the RO subsequently granted secondary service connection for that condition and the veteran filed a timely decision review request supplemental claim, the RO decision could not and did not divest the Board of jurisdiction over the veteran's initial appeal, and a remand is necessary to process that appeal to completion. *See Warren*, 28 Vet.App. at 221 ("The decision of the lower adjudicative body, the RO, cannot finally decide an issue already on appeal to the Board, the higher administrative appellate body." (citing *Jones v. Shinseki*, 23 Vet.App. 122, 125 (2009)). As in *Warren*, such a remand, which preserves the possibility of an earlier effective date and safeguards against any preclusive effect of the later RO decision, constitutes effective relief that the Court can provide. *Id.* at 221-22; *see Philbrook v. Wilkie*, 32 Vet. App. 342, 345 (2020) (holding that a case is moot "only if it is impossible for us to grant 'any effectual relief whatever' to [the appellant] in the event that he [or she] prevails" (quoting *Mission Prod. Holdings v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019)). And that relief additionally confers on Mr. Bailey the right to expeditious treatment of his lymphedema claim, *see* 38 U.S.C. § 7112, a right that he would not otherwise receive from a direct appeal of the July 2019 RO decision, *see Philbrook*, 32 Vet.App. at 345 (rejecting the Secretary's argument that the appeal was moot because he could appeal the RO's effective date determination); *Young v. Shinseki*, 25 Vet.App. 201, 204 (2012) (en banc) (modifying a Board decision to reflect remand, rather than referral, of a claim and explaining that, "absent Court correction," the claimant would "lose[] his statutory right to expedited consideration"); *Vargas-Gonzales v. Principi*, 15 Vet.App. 222, 228 (2001) (holding that the statutory right to expedited treatment on remand flows to downstream elements of a claim like the effective date).

Because there is relief that the Court can provide to Mr. Bailey, the Court concludes that his appeal of the lymphedema claim is not moot and that remand of that claim is warranted.[9] *See Philbrook*, 32 Vet.App. at 345; *Warren*, 28 Vet.App. at 221-22; *Young*, 25 Vet.App. at 204-05.

## C. TDIU

The parties' final dispute centers on whether the Board erred in failing to adjudicate entitlement to TDIU as part and parcel of the appeal of the evaluation for Mr. Bailey's service-connected residuals of prostate cancer. As noted above, the Secretary concedes that the Board erred in this regard but argues that the error was rendered harmless and that the TDIU appeal was mooted by the RO's September 2019 grant of entitlement to TDIU effective January 30, 2019, and the veteran's June 2020 decision review request supplemental claim challenging that effective date. Secretary's Br. at 14-18. But, for the same reasons outlined above for the lymphedema claim, the Court concludes that the veteran's appeal as to TDIU is not moot and that remand of that issue is necessary for the Board to expeditiously process that matter. *See Philbrook*, 32 Vet.App. at 345; *Warren*, 28 Vet.App. at 221-22; *Young*, 25 Vet.App. at 204-05.


## IV. CONCLUSION

Upon consideration of the foregoing, the portion of the March 1, 2019, Board decision denying entitlement to a disability evaluation in excess of 60% under § 4.115b, DC 7528, for residuals of prostate cancer is AFFIRMED. The reasonably raised claims for secondary service connection for diarrhea and lower extremity lymphedema due to radiation treatment for service-connected prostate cancer, as well as the issue of entitlement to TDIU, are REMANDED for further development, if necessary, and adjudication. The balance of the appeal is DISMISSED.

---

[9] A finding that Mr. Bailey's appeal of the lymphedema claim is moot would deprive him of relief that he would have otherwise received if he had not filed the January 2019 formal claim and the protective June 2020 decision review request supplemental claim. The veteran should not be punished for attempting to preserve the earliest possible effective date for his claim, particularly in an area of law that was heretofore unsettled. *See Comer v. Peake*, 552 F.3d 1362, 1369 (Fed. Cir. 2009) ("The VA disability compensation system is not meant to be a trap for the unwary, or a stratagem to deny compensation to a veteran who has a valid claim."); *Young*, 25 Vet.App. at 204 (explaining that, although the effective date implications of the Board's error in referring rather than remanding a claim "ultimately could be corrected on appeal of the decision awarding the improper effective date," the Court could remedy that error and provide relief to the veteran if it otherwise had jurisdiction over a part of the claim because "correction of the improper referral at the earliest possible point in the adjudication could avoid extensive delays in finally adjudicating and resolving the claim").

PIETSCH, *Judge*, concurring: Although I rely entirely on plain language interpretation and find no need to address regulatory history and purpose, I agree with the Court's conclusion that 38 C.F.R. § 4.115b, Diagnostic Code (DC) 7528, cannot be used to compensate the appellant for lymphedema and diarrhea. *See Ravin v. Wilkie*, 30 Vet.App. 310, 313 (2019) ("As always, if the Court is able to discern the plain meaning of the regulations in question, then its work is done and that meaning controls."). I also agree that the appellant reasonably raised a request for TDIU before the Board issued the decision on appeal. I diverge in part from the Court's handling of issues surrounding 38 C.F.R. § 3.155(d)(2).

The plain meaning of § 3.155(d)(2) reveals that the Board should have "considered" whether the appellant is entitled to "any" additional compensation for the "complications" of his prostate cancer, including diarrhea and lymphedema. Based on my reading of the regulation, however, I do not delve as far as the Court into the law of secondary entitlement. In my opinion, § 3.155(d)(2) instructs VA to compensate a veteran for "complications" of a service-connected disorder, but, through the word "any," allows the Agency flexibility to determine how best to carry out that responsibility.

There are a few key provisions that govern how the Agency compensates a veteran for symptoms or additional disabilities related to a service-connected disorder. Under 38 C.F.R. § 3.310(a), secondary service connection is available for a "disability which is proximately due to or the result of a service-connected disease or injury. . . . When service connection is thus established for a secondary condition, the secondary condition shall be considered a part of the original condition." Generally, a veteran must file a claim before VA will award entitlement to secondary disability benefits. Under 38 C.F.R. § 4.25(b), "disabilities arising from a single disease entity, e.g., arthritis, multiple sclerosis, cerebrovascular accident, etc., are to be rated separately as are all other disabling conditions, if any." And under 38 C.F.R. § 4.14 (the rule against pyramiding), "the evaluation of the same disability under various diagnoses is to be avoided."

The Board often grants a "separate disability rating" for disorders without awarding secondary entitlement. The Court has interpreted § 4.25(b) to mean that if an "appellant's symptoms are 'distinct and separate,' then the appellant is entitled to separate disability ratings for various conditions." *Murray v. Shinseki*, 24 Vet.App. 420, 424 (2011). Secondary service connection requires proximate causation and seems to contemplate disabilities that are not necessarily part of the same "disease entity." For example, if severe pain from a service-connected

21

foot disorder causes a veteran to feel depressed, then the veteran may be entitled to secondary service connection for depression. The depression does not "arise" from the foot disorder in the same way that, perhaps, lower extremity arthritis might. It is, however, proximately caused by that disorder, warranting secondary entitlement.

> Section 3.155(d)(2) reads as follows:

> Scope of claim. Once VA receives a complete claim, VA will adjudicate as part of the claim entitlement to any ancillary benefits that arise as a result of the adjudication decision (e.g., entitlement to 38 U.S.C. Chapter 35 Dependents' Educational Assistance benefits, entitlement to special monthly compensation under 38 C.F.R. § 3.350, entitlement to adaptive automobile allowance, etc.). The claimant may, but need not, assert entitlement to ancillary benefits at the time the complete claim is filed. VA will also consider all lay and medical evidence of record in order to adjudicate entitlement to benefits for the claimed condition as well as entitlement to any additional benefits for complications of the claimed condition, including those identified by the rating criteria for that condition in 38 CFR Part 4, VA Schedule for Rating Disabilities. VA's decision on an issue within a claim implies that VA has determined that evidence of record does not support entitlement for any other issues that are reasonably within the scope of the issues addressed in that decision. VA's decision that addresses all outstanding issues enumerated in the complete claim implies that VA has determined evidence of record does not support entitlement for any other issues that are reasonably within the scope of the issues enumerated in the complete claim.

38 C.F.R. § 3.155(d)(2).

This provision divides into three parts. The first part concerns "ancillary benefits." The U.S. Court of Appeals for the Federal Circuit has informed us that "ancillary benefits" do not include secondary service-connection claims. *Manzanares v. Shulkin*, 603 F.3d 1374, 1378 (Fed. Cir. 2017). The phrase "VA will also consider" clearly divides the "ancillary benefits" portion of the provision from what comes after, as the Federal Circuit apparently understood in *Manzanares*. The Secretary's argument that caselaw discussing "ancillary benefits" should guide the Court to a proper interpretation of "complications" is not correct, and his reliance on *Manzanares* is inapposite. The third part of § 3.155(d)(2) makes clear that a claimant should consider VA silence about an issue that potentially falls within the scope of his or her claim to be an implicit denial. That provision is not before the Court.

As the Court demonstrates, "complications" is a comprehensive word, and it easily covers disabilities falling under either § 3.310(a) or § 4.25(b) and both disorders at issue in this case. In addition to choosing the word "complications," the Secretary instructed the RO to adjudicate

22

entitlement "to *any* additional benefits." 38 C.F.R. § 3.155(d)(2) (emphasis added). The word "any" draws in secondary entitlement and much else besides. It is so broad, in fact, that I read it to mean that, if the Secretary identifies a complication, then he should consider all potential avenues for compensating a veteran for that complication. That duty is not unlimited, however. Both the rule against pyramiding and matters discussed below circumscribe additional entitlement.

The regulation's reference to "complications . . . identified by the rating criteria for that condition in 38 CFR Part 4" makes the Secretary's meaning clear. 38 C.F.R. § 3.155(d)(2). The Court – all courts – generally define terms consistently across a regulatory and statutory scheme. *Holle v. McDonald*, 28 Vet.App. 112, 116 (2016) ("Statutory terms are interpreted 'in their context with a view to their place in the overall statutory scheme.'") (quoting *Tyler v. Cain*, 533 U.S. 656, 662 (2001). The regulation makes that rule of interpretation explicit – complications should be defined in a manner that comports with the word's use in the rating criteria, and the Court should not define complications without reference to Part 4. *See Parker Drilling Mgmt. Servs. v. Newton*, 139 S. Ct. 1881, 1890 (2019) ("[C]ourts must give effect, if possible, to every clause and word in a statute").

The Secretary's rating criteria mention "complications" on numerous occasions. Often, the criteria include a general instruction to rate complications separately. *See* 38 C.F.R. § 4.119, DC 7900 ("Thereafter, rate residuals of [hyperthyroidism] or complications of medical treatment within the appropriate diagnostic code(s) within the appropriate body system"). On other occasions, the rating criteria give specific instructions directing how complications should be rated. *See* 38 C.F.R. § 4.114 (defining atrophic gastritis as a "complication of a number of diseases, including pernicious anemia. Rate the underlying condition."). In other places, the rating criteria include language generally defining complications for a particular disorder. *See* 38 C.F.R. § 4.104, DC 7122 Note(1) ("Separately evaluate amputations of fingers or toes, and complications such as squamous cell carcinoma at the site of a cold injury scar or peripheral neuropathy, under other diagnostic codes"); 38 C.F.R. § 4.116 Note(1) (stating that pregnancy is not a "disabilit[y] for rating purposes," but "[c]hronic residuals of medical or surgical complications of pregnancy may be"). And, at times, the rating criteria suggest that complications should not be rated separately at all. *See* 38 C.F.R. § 4.114, DC 7323 (a 100% disability rating is available for pronounced

ulcerative colitis "resulting in marked malnutrition, anemia, and general debility, or with serious complication as liver abscess").[10]

No DC shows the varied uses of "complications" in the rating criteria better than DC 7913, which compensates veterans for diabetes mellitus. The criteria for a 100% disability rating include "complications that would be compensable if separately evaluated," and the criteria for a 60% disability rating include "complications that would not be compensable if separately evaluated." 38 C.F.R. § 4.119, DC 7913. An accompanying note explains that raters should "[e]valuate compensable complications of diabetes separately unless they are part of the criteria used to support a 100-percent evaluation. Noncompensable complications are considered part of the diabetic process under DC 7913."[11] *Id.*

The Court's decision should not be read to suggest that every complication must be adjudicated as a claim for secondary entitlement or that every complication warrants additional compensation. Otherwise, Part 4 will be thrown into disarray, and such a rule may also cause the Court to infringe on the Secretary's exclusive responsibility to set rating criteria. *See Wanner v. Principi*, 370 F.3d 1124, 1129 (Fed. Cir. 2004) ("The statutory scheme thus consistently excludes from judicial review all content of the rating schedule as well as the Secretary's actions in adopting or revising that content.").

---

[10] *See also* 38 C.F.R. § 4.119, DC 7900 Note(4) ("Following surgery or other treatment, evaluate chronic residuals, such as nephrolithiasis (kidney stones), decreased renal function, fractures, vision problems, and cardiovascular complications, under appropriate diagnostic codes"); 38 C.F.R. § 4.114, DC 7348 (a 40% disability rating is available for vagotomy with pyloroplasty or gatroenterostomy "[f]ollowed by demonstrably confirmative postoperative complications of stricture or continuing gastric retention"); 38 C.F.R. § 4.118, DC 7815 Note ("Rate complications and residuals of mucosal involvement (ocular, oral, gastrointestinal, respiratory, or genitourinary) separately under appropriate diagnostic code"); 38 C.F.R. § 4.118, DC 7816 Note ("Rate complications such as psoriatic arthritis and other clinical manifestations (e.g. oral mucosa, nails) separately under the appropriate diagnostic code"); 38 C.F.R. § 4.117, DC 7704 Note(1) ("Rate complications such as hypertension, gout, stroke, or thrombotic disease separately"); 38 C.F.R. § 4.117, DC 7261 Note ("Separately rate complications such as systemic infections with encapsulated bacteria"); 38 C.F.R. § 4.71a, DC 5296 Note ("Rate separately for intracranial complications"); 38 C.F.R. § 4.87, DC 6200 Note ("Evaluate hearing impairment, and complications such as labyrinthitis, tinnitus, facial nerve paralysis, or bone loss of skull, separately"); 38 C.F.R. § 4.88b, DC 6310 (for syphilis and other treponemal infections, "[r]ate the complications of the nervous system, vascular system, eyes or ears"); 38 C.F.R. § 4.104, DC 7122 Note(1) ("Separately evaluate amputations of fingers or toes, and complications such as squamous cell carcinoma at the site of a cold injury scar or peripheral neuropathy, under other diagnostic codes"); 38 C.F.R. § 4.124a, DC 8105 Note ("Consider rheumatic etiology and complications").

[11] The Court, in a parenthetical, writes that DC 7913 states that complications of diabetes are "subject to secondary service connection." *Ante* at 14. DC 7913, once again, only discusses when VA should evaluate complications "separately."

Take again the criteria for diabetes mellitus. Depending on the nature of the complications in question, they may be separately compensable, altogether noncompensable, or folded into disability ratings at the 60% or 100% levels. Consider also spina bifida, a disorder governed by separate and unique provisions. For VA purposes, the diagnosis "spina bifida . . . includes complications or medical conditions that are associated with spina bifida according to the scientific literature." 38 C.F.R. § 17.900. The Secretary compensates spina bifida at one of three "levels," but then allows Agency adjudicators wide discretion to increase compensation for an "individual who would otherwise be paid at Level I or II and has one or more disabilities, such as blindness, uncontrolled seizures, or renal failure that result either from spina bifida, or from treatment procedures for spina bifida." 38 C.F.R. § 3.814(d)(2). The Secretary has folded those complications into the umbrella diagnosis of spina bifida and ensured that they will be compensated within the parameters of his particularized compensation scheme. These provisions and many others do not work with § 3.310(a) or a general rule that all complications must receive separate compensation. They do work when the Secretary must "consider" complications and award "any" available compensation.

I am convinced by the plain regulatory language and parts of the Court's analysis that the Secretary's assertion that § 3.310(a) benefits cannot fall under § 3.155(d)(2) is not correct and that lymphedema and diarrhea, in the context of this case, are "complications" of the appellant's prostate cancer. That is as far as I need to go to resolve this case. It is enough to say that the disorders that the appellant experienced are plainly "complications" of prostate cancer and then instruct the Board to "consider . . . entitlement to any additional benefits" for those disorders. The form of that consideration – and the implications that it has for ancillary issues like proper effective dates – is not a matter that I address at present.