# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 19-3791

RANDOLPH WILSON, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued November 17, 2021                                    Decided January 26, 2022)

*Javier A. Centonzio* and *Victoria R. Tamayo,* both of Largo, Florida, with whom *Kevin M. Clark,* of Sunnyvale, Texas, was on the pleading, for the appellant.

*Abhinav Goel,* with whom *William A. Hudson, Jr.,* Principal Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Megan C. Kral*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before PIETSCH, GREENBERG, and JAQUITH, *Judges*.

PIETSCH, GREENBERG, AND JAQUITH, *Judge*: Air Force veteran Randolph Wilson appeals a November 27, 2018, decision by the Board of Veterans' Appeals (Board) that denied his request for an increased disability rating for bilateral hearing loss. Record (R.) at 407-12. Because the Board erred by failing to address the veteran's claim that VA conducted minimal testing of his hearing loss, including no testing for peripheral vestibular disorders (PVD) that caused him to have dizziness and occasional staggering, R. at 446, the Court vacates the decision and remands the matter for initial consideration by the Board.

## I. BACKGROUND

After a May 2016 VA audiological examination, VA granted Mr. Wilson a noncompensable (0%) rating for bilateral hearing loss and a 10% rating for tinnitus. R. at 544. In February 2017, Mr. Wilson filed a VA Form 9, Appeal to Board of Veterans' Appeals, and appealed the hearing loss rating to the Board, stating that his examination did not include testing for PVD,[1] "which [causes him] to have dizziness and occasional staggering." R. at 446.

---

[1] "The peripheral vestibular system includes the organs of the inner ear, also known as the labyrinth, which

VA noted the veteran's reference to "peripheral vestibular disorder with dizziness and staggering" and directed that "a letter and application for his claim" be sent to him. R. at 443. The letter, sent in April 2017, explained that VA regulations required claims to be submitted on a standardized form. R. at 433-36. Instructions were included. *Id*. However, the letter appears to be a form letter; it says nothing about whether the veteran's PVD would be included in his appeal, and it does not indicate that a separate claim for that disorder was required or that PVD would not be considered based on what he had already submitted. The veteran acknowledged the correspondence and, having "no further claims to submit," asked "that the appeal process continue." R. at 430.

In November 2018, the Board considered and denied a higher rating for hearing loss. Utilizing the tables and rating instructions found in 38 C.F.R. § 4.85 (2018), the Board found that the veteran's hearing loss, measured through audiometric testing during the May 2016 examination, warranted a noncompensable rating. R. at 410. The Board did not discuss PVD, dizziness, or staggering.[2]

## II. ARGUMENTS

The veteran's arguments do not challenge how the Board applied § 4.85 in any respect but rather revolve around the Board's failure to obtain a new medical examination. A new examination, he contends, would have helped the Board determine whether his PVD and associated dizziness and staggering were related to his service-connected ear conditions. *See* Appellant's Brief (Br.) at 6–8 (discussing *McLendon v. Nicholson*, 20 Vet.App. 79, 81 (2006), and the various considerations that trigger the need for a new medical opinion). The veteran argues that a new examination also would have helped the Board assess whether his hearing loss had worsened since his last examination in May 2016. *See id*. at 9–11 (first quoting 38 C.F.R. § 3.327(a) (2014), which instructs the Board to obtain a new medical examination "if evidence indicates there has been a material change in a disability or that the current rating may be incorrect"; and then citing *Palczewski v. Nicholson*, 21 Vet.App. 174, 180 (2007)). And the failure to provide a medical

---

contains two primary structures: the cochlea, responsible for hearing, and the vestibular apparatus, responsible for maintaining balance, stability and spatial orientation." *Peripheral Vestibular System*, VESTIBULAR DISORDERS ASS'N, https://vestibular.org/article/what-is-vestibular/the-human-balance-system/peripheral-vestibular-system-inner-ear/.

[2] The Board remanded a claim for service connection for lung disease. The Court does not have jurisdiction over remanded, "nonfinal matters." *See Martinez v. Wilkie*, 31 Vet.App. 170, 173 n.2 (2019).

examination, he asserts, prevented the Board from considering whether an extraschedular rating was appropriate under 38 C.F.R. § 3.321(b)(1) (2021). *See* Appellant's Br. at 11–12.[3]

Each of these arguments should die on the vine, according to the Secretary. His position is that, although the veteran's comments in his Form 9 "indicated an informal intent to seek benefits for PVD, dizziness, or staggering, either as related to his service-connected hearing loss or tinnitus, or as due to service," the Board was under no obligation to discuss any of these issues because the veteran never filed a formal claim, as instructed. Secretary's Br. at 8.

The Secretary's arguments are based generally on the 2015 amendments to 38 C.F.R § 3.155, the regulation that governs how to file a claim for benefits. The amendments to § 3.155 (and a sister regulation, 38 C.F.R. § 3.160 (2021), which defines a *complete* claim) did away with informal claims and instituted a requirement that veterans submit claims on an application form prescribed by the Secretary. *Bailey v. Wilkie*, 33 Vet.App. 188, 199 (2021). As the Secretary notes, if a complete claim is not filed within 1 year of the receipt of the intent to file a claim, "VA will not take further action unless a new claim is received." 38 C.F.R. § 3.155(b)(4) (2021). Here, he says, the veteran's intent to file a claim was noted by VA, and the Agency acted accordingly by sending him the appropriate paperwork to bring that claim to life. Moreover, the Secretary contends, the veteran expressly disclaimed any intent to add new claims. Based on the veteran's inaction, the Secretary argues that the Board was neither obligated nor permitted to give the matter any attention.

### III. ANALYSIS

A. *Bailey* and VA's "Logically Related" Standard

The Secretary made similar arguments in *Bailey*, which held that, notwithstanding the newly minted application process, "VA is obligated to develop and adjudicate claims for secondary service connection that are reasonably raised during the processing of a properly initiated claim as to the primary service-connected disability's evaluation level." *Bailey*, 33 Vet.App. at 201. That understanding derived from § 3.155(d)(2), which provides that, once a complete claim is received,

> VA will also consider all lay and medical evidence of record in order to adjudicate entitlement to benefits for the claimed condition as well as entitlement to any additional benefits for complications of the claimed condition, including those

---

[3] His remaining arguments need not be reached for purposes of this appeal.

> identified by the rating criteria for that condition in 38 CFR Part 4, VA Schedule
> for Rating Disabilities.

38 C.F.R. § 3.155(d)(2). The Court reasoned that, because "the ordinary meaning of 'complications' in § 3.155(d)(2) encompasses disabilities caused or aggravated by treatment for a service-connected disability," the regulation imposes a duty on the Agency to consider claims for secondary service connection if they are raised during the course of adjudicating a complete claim concerning a related, primary disability. *Bailey*, 33 Vet.App. at 201; 38 C.F.R. § 3.310(a) (2021).

The Court found this interpretation consistent with "VA's general practice of identifying and adjudicating issues and claims that logically relate" to the pending claim and found no authority indicating that the 2015 amendments were intended to alter this long-standing practice. *Bailey*, 33 Vet.App. at 201 (quoting *Veterans Just. Grp., LLC (VJG), v. Sec'y of Veterans Affs.*, 818 F.3d 1336, 1356 (Fed. Cir. 2016)); *see also Robinson v. Peake*, 21 Vet.App. 545, 552 (2008) (requiring the Board to address all issues explicitly raised by the claimant or reasonably raised by the record), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009)). Indeed, as *Bailey* explained, VA backed away from its original intent to require a formal claim in this specific situation. 33 Vet.App. at 200-01. Responding to comments opposing the original intent, the Agency expressly stated that this "rule does not alter VA's general practice of identifying and adjudicating issues and claims that logically relate to and arise in connection with a claim pending before VA." Standard Claims and Appeals Forms, 79 Fed. Reg. 57,660, 57,672 (Sep. 25, 2014) (to be codified at 38 C.F.R. pts. 3, 19, 20).

## B. The Secretary's Concessions

In his initial brief, the Secretary acknowledged that "[a]ppellant's February 2017 Form 9 indicated an informal intent to seek benefits for PVD, dizziness, or staggering, either as related to his service-connected hearing loss or tinnitus, or as due to service." Secretary's Br. at 8. In other words, the Secretary characterized the assertions laid out in the veteran's Form 9 as a request for service connection for PVD, dizziness, and staggering, on a direct basis or as secondary to the condition being evaluated on appeal—hearing loss—thereby conceding that the issue of secondary service connection was raised in the context covered by *Bailey*. In his supplemental brief, the Secretary denied that he had conceded "that a claim was expressly raised to the Board" but offered no persuasive explanation for the quoted sentence from his initial brief. Secretary's Supp. Br. at 1 n.1. Instead, the Secretary restated his broader arguments: that the appellant "failed to respond to the RO's attempts to develop [his] claim," the appellant "failed to show any conceivable link

4

between hearing loss and PVD, dizziness, or staggering," and the appellant "failed to file a formal claim." *Id.* Then, at oral argument, the Secretary acknowledged that the veteran expressly stated a claim on his February 2017 Form 9, and the Secretary conceded that "*Bailey* can be extended to Form 9s," Oral Argument at 1:02:16-20, http://www.uscourts .cavc.gov/oral_arguments.php—but repeated his arguments that the regional office (RO) had fulfilled its obligation to attempt to develop the veteran's claim and that the veteran failed to connect his hearing loss to his dizziness, staggering, and possible PVD.

We need not zero in on the meaning and impact of the Secretary's shifting concessions regarding the application of *Bailey* in this case because the Board's complete failure to address the issues raised by the veteran's February 2017 Form 9 necessitates remand.

### C. The Duty to Construe Veterans' Submissions Sympathetically

The Board is required to consider all issues raised by the veteran, and to construe the veteran's arguments "'in a liberal manner for purposes of determining whether they raise issues on appeal.'" *Robinson*, 21 Vet.App. at 552 (quoting 38 C.F.R. § 20.202). *See Skaar v. Wilkie*, 31 Vet.App. 16, 17-18 (2019) (en banc order) (per curiam) (recognizing that the Board is, "of course," required to adjudicate all issues "that are expressly raised"). The scope of the veteran's claim cannot be limited to one specified diagnosis; the claim must be considered to encompass any disability reflected in the veteran's description of the claim and the symptoms the veteran describes. *See Clemons v. Shinseki*, 23 Vet.App. 1, 5 (2009) ("[T]he appellant did not file a claim to receive benefits only for a particular diagnosis, but for the affliction his . . . condition, whatever that is, causes him."). The duty to construe a veteran's submissions sympathetically is especially significant when the veteran is self-represented or represented by someone who is not a licensed attorney. *See Comer v. Peake*, 552 F.3d 1362, 1367-69 (Fed. Cir. 2009). In this case, the veteran's February 2017 Form 9 reflects that it was completed and signed by him, not a representative, and he was represented before the Board by a state veterans service organization, not an attorney.

### D. The Response to the Veteran's Form 9 Claim

The Secretary contends that the Board was not required to entertain the issues the veteran raised regarding PVD and his dizziness and staggering because "the RO specifically acknowledged [the appellant's claim of compensation for PVD] as an issue and requested that [a]ppellant file a formal application for it," but "[a]ppellant explicitly chose not to file that claim." Secretary's Br. at 5. But the Secretary's assertion is not supported by the record.

First, the veteran's submission was an appeal to the Board, as the Form 9 specifies in its title: "Appeal to Board of Veterans' Appeals." R. at 446. Second, what the RO sent the veteran 6 weeks later was a form letter that did not refer to his Form 9 or the dizziness, staggering, and PVD it described. R. at 433-35. The RO's only notation of the veteran's reference to "peripheral vestibular disorder with dizziness and staggering" was an internal one that was not shared with the veteran. R. at 443. The form letter offered nary a clue that it was VA's position that a separate claim for PVD was required or that PVD would not be considered based on what the veteran had already submitted. Without that information, the veteran would have no reason to know what VA required from him, and it is unreasonable to read into his reply—"I have no further claims to submit at this time. I am requesting that the appeals process continue," R. at 430—any renunciation, waiver, or lack of interest in the PVD aspect of his hearing loss claim, as he had already specifically claimed PVD, dizziness, and staggering on his February 2017 Form 9, R. at 446. The RO's uninformative form letter and the veteran's response do not come close to bearing the weight the Secretary gives them, either as satisfaction of the Secretary's obligation to attempt to develop the veteran's claim or as the foundation of an impenetrable roadblock to consideration of the veteran's claim. *See* Secretary's Supp. Br. at 1, 7-10.

Blaming the veteran for the Board's inattention to the issues the veteran raised also does not square with the standard VA set in adopting the formal claims requirement. VA specified that the final rule did "not alter VA's general practice of identifying and adjudicating issues and claims that logically relate to and arise in connection with a claim pending before VA." 79 Fed. Reg. at 57,672. *See VJG*, 818 F.3d at 1356 (highlighting the quoted assurance by VA in upholding amendments to relevant regulations). And VA also explained that under the new 38 C.F.R. § 3.155(d)(2), VA would continue to identify and adjudicate claims that "are reasonably within the scope of the claimed issues in the complete claim" and would continue to read its obligation under 38 C.F.R. § 3.103(a) to fully and sympathetically develop claims "to include consideration of matters reasonably related to and raised in connection with a claim before VA, whether or not raised expressly by the claimant." 79 Fed. Reg. at 57,672.

E. Determining Whether the Veteran's Claims Were Logically Related

In this case, the Board and the RO were silent regarding whether the veteran's express claim that he experienced dizziness, staggering, and PVD was logically related to his hearing loss claim. That silence is deafening and cannot be deemed harmless under the circumstances presented. *See*

6

*Simmons v. Wilkie*, 30 Vet.App. 267, 279-80 (2018) ("[H]armless error analysis generally should be conducted through a case-specific application of judgment based upon examination of the individual record . . . ."), *aff'd*, 964 F.3d 1381 (Fed. Cir. 2020). The veteran asserted that "[t]here was no testing for peripheral vestibular disorders, which does cause [him] to have dizziness and occasional staggering," as part of his "hearing loss" claim he was appealing to the Board—in his explanation of why he thought VA had decided his hearing loss claim incorrectly. R. at 446. On his February 2017 Form 9, the veteran's reference to his PVD, dizziness, and staggering followed and elaborated on his contention that "minimal testing of [his] hearing loss was performed by the VA." R. at 466. And his claim of PVD, dizziness, and staggering was followed by his assertions that he needs hearing aids and that his disability is due to his in-service exposure—without adequate hearing protection—to loud noise from aircraft landing and taking flight. R. at 446-47.

In addition to the context of the veteran's PVD, dizziness, and staggering contentions, some indicators of their logical relationship to his hearing loss claim can be found in the regulations and caselaw. A note in Diagnostic Code (DC) 6200 describes labyrinthitis as a complication of hearing impairment. 38 C.F.R. § 4.87, DC 6200 note (2021) ("Evaluate hearing impairment, and complications such as labyrinthitis . . . separately."). "Labyrinthitis" is "inflammation of the internal ear" that "may be accompanied by hearing loss or vertigo." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 982 (33d ed. 2020). "Labyrinthitis" is also called "otitis interna." *Id.* "[O]titis interna is an archaic name for a general ear infection condition which is more accurately classified as a peripheral vestibular disorder, DC 6204." Schedule for Rating Disabilities; Diseases of the Ear and Other Sense Organs, 64 Fed. Reg. 25,202, 25,205 (May 11, 1999) (to be codified at 38 C.F.R. pt. 4). Prior to its amendment in 1999, DC 6204 was titled "[l]abyrinthitis, chronic." *See* 38 C.F.R. § 4.87a, DC 6204 (1998); *Montgomery v. McDonald*, No. 13-3400, 2014 WL 4955655, at *2 (Vet. App. Oct. 3, 2014) (mem. dec.) (noting VA's 1999 explanation for retitling DC 6204 "peripheral vestibular disorders" rather than "labyrinthitis"), *amended by* 2015 WL 1263321 (Vet. App. Mar. 20, 2015) (single-judge order).

And DC 6204 now specifies that it applies to "[p]eripheral vestibular disorders: [d]izziness and occasional staggering," and that "[h]earing impairment . . . shall be separately rated and combined." *See* 38 C.F.R. § 4.87, DC 6204. "Dizziness" is "a sensation of unsteadiness with a feeling of movement within the head" and related to vertigo, DORLAND'S at 553, though vertigo does not "mean any form of dizziness"—vertigo is "an illusory sense that either the environment

or one's own body is revolving," DORLAND'S at 2021. As the Court observed in *Doucette v. Shulkin,* a hearing loss claimant could describe symptoms such as dizziness and recurrent loss of balance "and the Board would be required to explain whether the rating criteria contemplate those functional effects." 28 Vet.App. 366, 371 (2017).

### F. The Board's Failure to Address the Veteran's Contentions

To be sure, we need not, should not, and do not determine, on this record, the relationship between the veteran's formal hearing loss claim and his express claim of dizziness, staggering, and PVD. The point is that the RO and the Board did not do so, and no one told the claimant in an understandable way that what he'd submitted was insufficient or notified him "of the information necessary to complete the appropriate application form prescribed by the Secretary." 38 C.F.R. § 3.155(b)(3) (setting forth the Secretary's responsibility "[u]pon receipt of an intent to file a claim"). Moreover, the Board did not state any reasons or bases for not addressing the veteran's February 2017 Form 9 claims. In rendering its decision, the Board is required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record. 38 U.S.C. § 7104(d)(1). "To comply with this requirement, the Board must analyze the credibility and probative value of evidence, account for evidence it finds persuasive or unpersuasive, and provide reasons for rejecting material evidence favorable to the claimant." *Smiddy v. Wilkie*, 32 Vet.App. 350, 356 (2020) (citing *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995)).

The veteran's statements regarding his symptoms—his dizziness and staggering—constitute competent evidence that should have been considered, *see Clemons*, 23 Vet.App. at 4-6, and addressed. Remand is appropriate "where the Board has ... failed to provide an adequate statement of reasons or bases for its determination." *Tucker v. West*, 11 Vet.App. 369, 374 (1998). In this case, the determination was unstated and unexplained. The Secretary cannot provide his own post hoc rationalizations for why the Board did not address certain favorable evidence. *See In re Sang Su Lee*, 277 F.3d 1338, 1345-46 (Fed. Cir. 2002) ("'[C]ourts may not accept appellate counsel's post hoc rationalization for agency action.'" (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962))).

## IV. CONCLUSION

Accordingly, the November 27, 2018, Board decision is VACATED and the matter REMANDED for further consideration.